IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────

PAKENAUTH GEER,

                Plaintiff,

     v.

TIM F. SHEEHAN, Assistant
Superintendent, Washington
Correctional Facility,

                Defendant.

Civil Action No.
9:14-CV-0984 (DNH/DEP)

─────────────────────────────

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF:

PAKENAUTH GEER, *Pro se*
05-A-1952
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, NY 14020

FOR DEFENDANT:

HON. ERIC T. SCHNEIDERMAN      MICHAEL G. McCARTIN, ESQ.
New York State Attorney General    Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

This is a civil rights action brought by plaintiff Pakenauth Geer, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis* ("IFP"), pursuant to 42 U.S.C. § 1983. Plaintiff claims that his Eighth Amendment rights were violated when he was relegated to a top bunk, an assignment that, based upon his age and physical condition, allegedly placed his safety and health at risk.

Currently pending before the court is a motion brought by the remaining defendant, Tim F. Sheehan, the Superintendent of the Washington Correctional Facility ("Washington"), requesting the entry of summary judgment dismissing plaintiff's complaint. In his motion, defendant seeks dismissal of the plaintiff's Eighth Amendment claim based both on the merits and plaintiff's alleged failure to exhaust available administrative remedies before filing suit. For the reasons set forth below, I recommend that defendant's motion be granted.

I.    <u>BACKGROUND</u>[1]

At the times relevant to his claims in this action, plaintiff was an inmate being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), and designated to Washington, a

---

[1]     In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

prison facility located in Comstock, New York. *See generally* Dkt. No. 5.

While housed at Washington, plaintiff was issued a misbehavior report by a

law library officer who accused him of "cussing [the officer] and yelling in the

law library." *Id.* at 1. A disciplinary hearing to address the charges set forth

in the misbehavior report was conducted by an assistant superintendent,

identified by plaintiff only as "James Doe." *Id.* During the hearing, plaintiff

requested, and was refused, a civilian investigation into the matter. *Id.*

As a result of the hearing, a penalty was imposed that resulted in

plaintiff being assigned to a top bunk bed. Dkt. No. 5 at 1. Plaintiff contends

that the top bunk assignment created a serious risk of danger in violation of

his Eighth Amendment rights due to his age and physical ailments. *Id.* at

1-2. In support of that contention, plaintiff notes that he is sixty-seven years

old, has difficulty balancing himself while walking, experiences an eighty

percent loss of vision in his left eye, and needs to use the bathroom in

excess of five times per night. *Id.*

II.    <u>PROCEDURAL HISTORY</u>

Plaintiff commenced this action on or about August 7, 2014. Dkt. No.

1. Plaintiff's original complaint named, as defendants, Library Officer Beebe

and an individual identified as "James" and listed as "Ass. Superintendent."

*Id.* at 1-2. The complaint was accompanied by a motion for leave to proceed

IFP. Dkt. No. 2. On November 24, 2014, following a review of plaintiff's IFP

application and complaint, pursuant to 28 U.S.C. §§ 1915(e), 1915A, District Judge David N. Hurd issued an order granting plaintiff leave to proceed without prepayment of fees but dismissing his complaint with leave to file an amended complaint.[2] Dkt. No. 4.

On or about December 22, 2014, plaintiff filed a handwritten document, which was construed by the court as an amended complaint. Dkt. No. 5. In that pleading, plaintiff asserted clams against defendants Beebe and Doe, accusing both of retaliation and violating his rights under the Eighth Amendment. *See generally id.* On May 4, 2015, following a review of plaintiff's amended complaint pursuant to sections 1915(e) and 1915A, Judge Hurd issued a decision accepting the amended complaint for filing to the extent it asserted an Eighth Amendment conditions of confinement claim against defendant Doe, but dismissed the other causes of action, including those against Library Officer Beebe. Dkt. No. 6 at 3-4.

Assistant New York State Attorney General Michael McCartin wrote to the court on May 28, 2015, advising that Tim F. Sheehan, the Superintendent at Washington, was served with process in the action and requested representation from the New York State Office of the Attorney General. Dkt. No. 9. On the basis of that letter, the court issued a text order

_____

[2]    Judge Hurd also directed the clerk to revise the court's records to identify the second defendant as "James Doe." Dkt. No. 4 at 13.

on May 29, 2015, directing that Superintendent Sheehan be substituted as the defendant in the action in the place of defendant James Doe.[3] Dkt. No. 10. Defendant Sheehan subsequently interposed an answer to plaintiff's amended complaint on July 10, 2015. Dkt. No. 15.

On March 11, 2015, following the close of discovery, defendant Sheehan filed a motion requesting the entry of summary judgment dismissing plaintiff's remaining Eighth Amendment claim. Dkt. No. 20. In his motion, defendant Sheehan argues both that plaintiff's claim is procedurally barred based upon his failure to comply with the requirement to fully exhaust available administrative remedies before filing suit, and additionally that no reasonable factfinder could find in plaintiff's favor on his conditions of confinement claim. *See generally* Dkt. No. 20-8. Plaintiff has since responded in opposition to defendants' motion, Dkt. No. 23, which is now fully briefed and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

---

[3] Because plaintiff named the "assistan[t] superintendent" as a defendant in his amended complaint, Dkt. No. 5 at 1, it seems apparent that Superintendent Sheehan was not the intended defendant or the individual responsible for allegedly assigning plaintiff to a top bunk in violation of his Eighth Amendment rights. This discrepancy, however, is of no moment in light of my recommendation concerning the merits of plaintiff's Eighth Amendment claim.

III.   DISCUSSION

A.   Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a

material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.    Exhaustion of Administrative Remedies

In his motion, defendant Sheehan argues that plaintiff failed to file and pursue to completion a grievance concerning his bunk-assignment claim before commencing this lawsuit. Dkt. No. 20-8 at 4-8. In his opposition to defendant's motion, plaintiff argues that he did file a grievance but received no response to that grievance. Dkt. No. 23 at 1. Plaintiff also asserts that he wrote to defendant Sheehan and the New York State Attorney General complaining of being assigned to a top bunk. *Id*.; *see also* Dkt. No. 20-5 at 60-61.

7

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). The exhaustion provision of section 1997e(a) is "mandatory" and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that an inmate-plaintiff has failed to fully comply with the administrative process prior to commencing an action in federal court, that plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *Wilson v. McKenna*, --- F. App'x ----, No. 15-3496, 2016 WL 5791558, at *1 (2d Cir. Oct. 4, 2016).[4] "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by

---

[4]    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

"compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).

In New York, the DOCCS maintains a grievance procedure, designated as the Inmate Grievance Program ("IGP"), for use by prison inmates in raising complaints regarding prison conditions. *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC") have up to sixteen days after the grievance is filed to informally resolve the issue.[5] *Id.* at § 701.5(b)(1). If no informal resolution is achieved, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. *Id.* at § 701.5(b)(2).

In the event a plaintiff's grievance is denied at the initial level, the grievant may appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. 7 N.Y.C.R.R.

---

[5]     The IGRC is comprised of "two voting inmates, two voting staff members, and a non- voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

§ 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal.[6]  *Id.* at § 701.5(c)(3)(i), (ii).

The third and final step of the IGP involves an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be taken within seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to render a written decision within thirty days of receipt of the appeal. *Id.* at § 701.5(d)(2)(i).

As can be seen, at each step of the IGP process, a decision must be rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the IGRC and/or superintendent do not timely respond, an inmate is permitted to appeal "to the next step." *Id.* at § 701.6(g)(2). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks omitted)).

---

[6]     Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of the appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. Section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA.[7] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* The

---

[7]      According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners involves circumstances in which "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

In support of his motion, defendant has submitted a declaration from Karen Bellamy, Director of the DOCCS IGP. Dkt. No. 20-2. Bellamy states that a search of CORC's records failed to reveal that the plaintiff filed an appeal with that body concerning his top bunk claim. *Id.* at 1-2; Dkt. No. 20-3; *see also* Dkt. No. 20-7 at 1.[8] While plaintiff contends that he did, in fact, file a grievance at Washington, he has made no representation, either at his deposition or in response to defendant's motion, that he pursued that

---

[8]     In support of his motion and as required by the local rules of practice for this court, defendant submitted a statement of material facts, which, he argues, are undisputed. Dkt. No. 20-7; N.D.N.Y. L.R. 7.1(a)(3). In opposing defendant's motion, plaintiff failed to provide a responsive statement of material of facts in accordance with the local rules. *Id.* By its terms, rule 7.1 of the local rules provides, in part, that "[t]he Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id.* (emphasis in original). Here, because plaintiff was warned of the consequences of failing to properly respond to defendant's statement of material facts, Dkt. No. 20 at 2; Dkt. No. 22 at 2, and has failed to do so, I recommend that the court deem the facts contained in defendant's statement as having been admitted to the extent they are supported by accurate record citations. *See, e.g., Latouche v. Tompkins*, No. 09-CV-0308, 2011 WL 1103045, at *1 (N.D.N.Y. Mar. 23, 2011) (Mordue, J.); *see also Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). As to any facts not contained in defendant's statement of material facts, in light of the procedural posture of this case, the court has resolved "all ambiguities and draw[n] all permissible factual inferences" in favor of plaintiff. *Terry*, 336 F.3d at 137.

grievance through to the CORC. Plaintiff's failure to appeal his grievance to the CORC constitutes a failure to exhaust available administrative remedies under the PLRA. *See, e.g., Gayle v. Benware*, 716 F. Supp. 2d 293, 298 (S.D.N.Y. 2010) (finding that the plaintiff failed to exhaust under the PLRA when he failed to appeal to the superintendent and the CORC after not receiving a response from the IGRC to his grievance). Moreover, even assuming it is true that plaintiff did not receive a response to the grievance he allegedly filed, the IGP has been interpreted by courts in this circuit as requiring inmates to appeal to the next level when they do not receive a timely response to their grievance. *See* 7 N.Y.C.R.R. § 701.6(g)(2) ("[M]atters not decided within the time limits may be appealed to the next step."); *Dabney v. Pegano*, 604 F. App'x 1, 4-5 (2d Cir. 2015) (citing section 701.6(g) and concluding that, based on that provision, the plaintiff had "an unimpeded path to the CORC, notwithstanding his claims that the Great Meadow grievance clerk failed to process his complaint and that the Clinton superintendent ignored his appeal"); *Hyliger v. Gebler*, 624 F. App'x 780, 782 (2d Cir. 2015) ("Under the regulations. . ., if at any step of the grievance process[] an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to appeal to the next step. Thus, when [the plaintiff] did not receive a written response from the IGRC, appeal to the superintendent was still an available administrative remedy."

(quotation marks, alteration, citation, and footnote omitted)). Accordingly, under the IGP, plaintiff was required to appeal to the superintendent, and on to the CORC, when he failed to receive a written response to his grievance.

The record in this case shows, without contradiction, that, while plaintiff appealed the denial of at least one other grievance to the CORC, Dkt. No. 20-3, he did not do so in connection with the Eighth Amendment conditions of confinement claim asserted in this action. This default constitutes a failure to exhaust available administrative remedies for purposes of the PLRA, and serves as a procedural bar to plaintiff maintaining this action. Accordingly, I recommend dismissal of plaintiff's Eighth Amendment cause of action on this basis.[9]

---

[9]     As for plaintiff's allegation that he sent a letter to the New York State Attorney General concerning his top-bunk assignment, that letter, which is attached to plaintiff's response to the pending motion, discusses only the number of cases filed by him against Dane Clark and the superintendent at Washington, and makes no mention of the top bunk bed assignment. Dkt. No. 23 at 7. In addition, plaintiff's letters to defendant Sheehan appear to center upon the failure of the IGRC to process plaintiff's grievances and do not specifically reference the top bunk assignment claim. *Id.* at 4-6.

C.     Merits of Plaintiff's Eighth Amendment Claim[10]

In both his complaint and his opposition to defendant's motion, plaintiff asserts that, as a result of the hearing conducted by the unidentified assistant superintendent, he was assigned to a top bunk bed, implying that his assignment would last for the full thirty days associated with the penalty imposed by the hearing officer. Dkt. No. 5 at 1. In his deposition, however, plaintiff admitted that he was only assigned to a top bunk for part of one day, and possibly for as briefly as one hour, and that he did not actually spend an overnight on a top bunk. Dkt. No. 20-5 at 57-58. Plaintiff also acknowledged that during the short period of time that he was assigned to a top bunk bed, he had access to a chair. *Id.* at 33. Defendant argues that, based upon these facts, no reasonable factfinder could conclude that his constitutional rights were violated. Dkt. No. 20-8 at 8-11.

The Eighth Amendment prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society[,]' or 'involve[s] the unnecessary and wanton infliction of pain[.]'" *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958) and *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976) (citations omitted)). While the Eighth Amendment "'does not

---

[10]     Notwithstanding my recommendation to dismiss plaintiff's remaining claim based on my finding that plaintiff failed to exhaust available administrative remedies pursuant to the PLRA, I have addressed the merits of the claim out of an abundance of caution.

mandate comfortable prisons,' neither does it permit inhumane ones."
*Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman,*
452 U.S. 337, 349 (1981)); *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir.
2013).

A claim alleging that prison conditions have violated the Eighth
Amendment must satisfy both an objective and a subjective requirement.
*Walker*, 717 F.3d at 125; *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996).
To satisfy the objective element, "the plaintiff must demonstrate that the
conditions of his confinement result in 'unquestioned and serious
deprivations of basic human needs.'" *Jolly*, 76 F.3d at 480 (quoting
*Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 2985)); *see also Walker*, 717
F.3d at 125 ("To meet the objective element, the inmate must show that the
conditions, either alone or in combination, pose an unreasonable risk of
serious damage to his health."). In a prison setting, basic needs include
"food, clothing, medical care, and safe and sanitary living conditions."
*Walker*, 717 F.3d at 125 (*citing*, *inter alia, Rhodes*, 452 U.S. at 347). As to
the subjective requirement, "the plaintiff must demonstrate that the
defendants imposed those conditions with 'deliberate indifference.'" *Jolly*,
76 F.3d at 480 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *see
also Walker*, 717 F.3d at 125; *Waldo v. Goord*, No. 97-CV-1385, 1998 WL
713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J., *adopting report and*

*recommendation by* Homer, M.J.). Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Walker*, 717 F.3d at 125; *Waldo*, 1998 WL 713809, at *2.

In this case, there is no evidence from which a reasonable factfinder could conclude that plaintiff's basic human needs were withheld as a result of the top-bunk assignment. Indeed, that assignment lasted less than one full day. [Dkt. No. 20-5 at 58](). Plaintiff testified at his deposition that, after he was assigned a top bunk, he "then . . . stayed there for a while, two minutes, a while, whatever, then [he] went to the nurse." *Id.* at 57. Following his visit to the nurse, plaintiff was reassigned to a bottom bunk. *Id.* at 57-58. Given the extraordinarily short duration plaintiff was assigned to a top bunk, no reasonable factfinder could conclude that his health and safety were objectively at risk. *Cf. Scalpi v. Town of E. Fishkill*, No. 14-CV-2126, 2016 WL 858916, at *9 (S.D.N.Y. Feb. 29, 2016) ("Put simply, 'several hours' without food, water, sanitary napkins, and access to bathroom facilities, while uncomfortable, does not rise to the level of a constitutional violation."); *McCree v. Messina*, No. 14-CV-5201, 2015 WL 4299546, at *3 (S.D.N.Y. July 15, 2015) (finding that "the approximately eleven-hour period during

which [the plaintiff] was allegedly exposed to the pools of [human] waste is insufficient in duration to constitute a sufficiently serious deprivation of the minimal civilized measure of life's necessities" (quotation marks omitted) (citing cases)). In any event, there is no evidence whatsoever that would support a factfinder's conclusion that the hearing officer, even if he were identified and named as a defendant, subjectively acted with deliberate disregard to plaintiff's health and safety when he imposed a penalty that resulted in plaintiff being assigned to a top bunk. Accordingly, I recommend that plaintiff's remaining Eighth Amendment claim be dismissed on the merits.

IV.     SUMMARY AND RECOMMENDATION

The sole remaining claim in this action involves plaintiff's assignment to a top bunk as a result of a disciplinary hearing. Plaintiff contends that the assignment jeopardized his health and safety and therefore constituted cruel and unusual punishment in violation of the Eighth Amendment. Based upon the record now before the court, it is clear that plaintiff failed to satisfy his obligation under the PLRA to exhaust available administrative remedies before commencing this action. In addition, with respect to the merits of his claim, no reasonable factfinder could conclude that plaintiff was subjected to cruel and unusual punishment in light of plaintiff's admission that he was

assigned to a top bunk bed for only part of a day, and not overnight. Accordingly, it is hereby respectfully

RECOMMENDED that defendant's motion for the entry of summary judgment (Dkt. No. 20) be GRANTED, and that plaintiff's complaint in this action be DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[11] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

---

[11] If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:     February 6, 2017
           Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

2016 WL 5791558
Only the Westlaw citation is currently available.
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE
32.1 AND THIS COURT'S LOCAL RULE 32.1.1.
WHEN CITING A SUMMARY ORDER IN A
DOCUMENT FILED WITH THIS COURT, A PARTY
MUST CITE EITHER THE FEDERAL APPENDIX
OR AN ELECTRONIC DATABASE (WITH THE
NOTATION "SUMMARY ORDER"). A PARTY CITING
A SUMMARY ORDER MUST SERVE A COPY OF IT
ON ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals,
Second Circuit.

Alvin Wilson, Plaintiff–Appellant,
v.
Brooke McKenna, Defendant–Appellee,
John Doe, LT; Corrigan–R–CC, Hartford Superior
Court, State Marshal Lockup Department, John
Aver, Jane Doe, Hartford HCC, Doctor, DOC
Medical Staff, John Doe, Hartford Hospital,
an emergency room doctor, John Wayen, Jane
Does, 3, Corrigan–R–CC DOC Medical Health
Care Staff, John Williams, John Erfe, Warden,
John Hanney, John Doe, Corrigan–R–CC, DOC,
Medical Health Care Staff, Sharron Laplante,
John Doe, Warden, Hartford HCC, DOC, F.
Gillig, Omprakash Pillai, Monica J. Farinella,
Ford, Warden, State of Connecticut, Defendants.

15-3496
|
October 4, 2016

**Synopsis**
**Background:** State inmate brought § 1983 action against
correction officer alleging deliberate indifference to his
medical needs in violation of his Eighth Amendment
rights. The United States District Court for the District
of Connecticut, Bryant, J., 2015 WL 5455634, entered
summary judgment in favor of correction officer. Inmate
appealed.

**[Holding:]** The Court of Appeals held that inmate failed
to exhaust his administrative remedies, as required under
Prison Litigation Reform Act (PLRA) to bring § 1983
claim.

Affirmed.

West Headnotes (1)

[1]     **Civil Rights**
        

State inmate failed to exhaust his
administrative remedies, as required under
Prison Litigation Reform Act (PLRA) to
bring § 1983 claim, before bringing his
§ 1983 action alleging that correction
officer was deliberately indifferent to his
medical needs in violation of his Eighth
Amendment rights when she allegedly denied
him medical care when he was injured, where
inmate did not comply with Connecticut
Department of Correction's administrative
directive governing inmate grievances before
filing suit, including filing inmate request form
that contained his claim against officer after
deadline, and filing grievance appeal form
before filing level one grievance. U.S. Const.
Amend. 8; Civil Rights of Institutionalized
Persons Act § 7, 42 U.S.C.A. § 1997e(a).

Cases that cite this headnote

Appeal from a judgment of the United States District
Court for the District of Connecticut (Bryant, *J.*).
 **\*1  UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the district court is **AFFIRMED.**

**Attorneys and Law Firms**

FOR PLAINTIFF–APPELLANT: Alvin Wilson, pro se, Suffield, Connecticut.

FOR DEFENDANT–APPELLEE: Zenobia Graham–Days, Assistant Attorney General, for George Jepsen, Attorney General of the State of Connecticut, Hartford, Connecticut.

PRESENT: DENNY CHIN, SUSAN L. CARNEY, Circuit Judges, KATHERINE B. FORREST, District Judge.[*]

**SUMMARY ORDER**

Plaintiff-appellant Alvin Wilson, proceeding *pro se*, appeals from a judgment in favor of defendant-appellee Corrections Officer Brooke McKenna in his suit under 42 U.S.C. § 1983, alleging deliberate indifference to his medical needs. The district court granted summary judgment to McKenna, concluding, *inter alia*, that Wilson had failed to exhaust his administrative remedies. We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

As an initial matter, Wilson does not address exhaustion in his appellate brief, and therefore has abandoned any challenge to the district court's determination that he failed to exhaust his administrative remedies. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92–93 (2d Cir. 1995). In any event, we conclude that the district court properly determined as a matter of law that Wilson failed to exhaust his administrative remedies.

We review *de novo* a district court's grant of summary judgment. *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126 (2d Cir. 2013) (per curiam). Summary judgment must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under the Prison Litigation Reform Act of 1995 (the "PLRA"), "[n]o action shall be brought with respect to prison conditions under [§ 1983] ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted." 42 U.S.C. § 1997e(a). The PLRA requires "proper exhaustion," meaning exhaustion in "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). Nevertheless, the administrative remedies must be "available." *Ross v. Blake*, ––– U.S. ––––, 136 S.Ct. 1850, 1858, 195 L.Ed.2d 117 (2016). An administrative procedure is unavailable when (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Williams v. Priatno*, 829 F.3d 118, 122–24 (2d Cir. 2016) (quoting *Ross*, 136 S.Ct. at 1859–60).

The Connecticut Department of Correction ("DOC") requires inmates to submit grievances in accordance with Administrative Directive 9.6 ("AD 9.6"). Defendant's Cross–Motion for Summary Judgment, Ex. A, *Wilson v. McKenna*, No. 12–cv–1581, (S.D.N.Y. May 5, 2015), ECF No. 29. According to that directive, the aggrieved inmate must seek informal resolution prior to filing a grievance. AD 9.6 § 6.A. If attempts to resolve the issue verbally fail, then the inmate must submit an Inmate Request Form clearly stating the problem and requesting a remedy. *Id.* If no response from DOC is received within fifteen business days of receipt of the Inmate Request Form or if the remedy offered through informal resolution is unsatisfactory, the inmate may file a Level 1 grievance within thirty days of the incident giving rise to the grievance. *Id.* § 6.A, 6.C. To do so, he must submit an Inmate Administrative Remedy Form that covers requests for relief for both "Grievance[s]" and "Health Service Review[s]." Def. Cross–Mot. Summ. J., Ex. A at 16.

**\*2** When submitting a Level 1 grievance, the inmate must attach the previously-filed Inmate Request Form to the Inmate Administrative Remedy Form or explain why it is not attached. AD 9.6 § 6.C When an inmate files a grievance that fails to comply with these procedural requirements, DOC may either (1) return the grievance without disposition, at which point inmates are permitted to correct the error and refile the grievance, *id.* § 6.E, or (2) reject the grievance outright without giving the inmate an opportunity to refile, *id.* § 6.F. DOC is to provide a written response to the Level 1 grievance within thirty business days of receipt of the grievance. *Id.* § 6.I. An inmate may

appeal a Level 1 disposition to Level 2 within five calendar days of his receipt of the decision. *Id.* § 6.K.

As the district court concluded, the record shows that Wilson failed to properly exhaust the administrative remedies available to him before filing suit in federal court. Wilson alleges he was injured and denied necessary medical care by McKenna on September 16, 2012. Wilson filed an Inmate Administrative Remedy Form on September 20, 2012. On this form, Wilson checked a box indicating that he was "filing a Grievance." Def. Cross–Mot. Summ. J., Ex. I at 1. He did not check the box for "requesting a Health Services Review," but did check boxes for Diagnosis/Treatment" and "All Other Health Care Issues" in the Health Services Review section of the form. *Id.* Further, Wilson requested only medical care in the narrative portion of the form—no mention was made of McKenna, or any other guard for that matter. The form was treated as a request for Health Services Review and denied on October 16, 2016, because, by then, Wilson had been examined by medical staff on multiple occasions.

Wilson also submitted an Inmate Request Form on October 9, 2012, in which he mentioned the alleged incident with McKenna, but complained only about his lack of medical treatment. It was not until October 17, 2012, thirty-one days after he allegedly sustained an injury, that Wilson filed an Inmate Request Form detailing his complaint against McKenna. Although he also filed an Inmate Grievance Appeal Form—Levels $^2/_3$ on October 17, 2012, Wilson never filed a Level 1 grievance against McKenna. [1] Hence, Wilson failed to comply with the Administrative Directive: He did not submit a timely Level 1 grievance and his "appeals" were premature. Therefore, he did not demonstrate "proper exhaustion" and the district court properly entered summary judgment in favor of McKenna. *See Ross*, 136 S.Ct. at 1857 ("[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.").

Because Wilson did not raise the issue below or on appeal, we do not consider whether the grievance process was "unavailable" to him, either because his September 20, 2012 Inmate Administrative Remedy Form was treated as a request for Health Services Review rather than a Grievance, or for any other reason. *See Ross*, 136 S.Ct. at 1859–60; *Guzman v. Local 32B–32J, Serv. Emps. Int'l Union*, 151 F.3d 86, 93 (2d Cir. 1998).

We have considered Wilson's remaining arguments and conclude they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

### All Citations

--- Fed.Appx. ----, 2016 WL 5791558

Footnotes

[*]   The Honorable Katherine B. Forrest, of the United States District Court for the Southern District of New York, sitting by designation.

[1]   We note that the record below indicates that DOC never received the forms Wilson purportedly filed on October 9, 2012, and October 17, 2012, a fact that he does not dispute. Nevertheless, we assume for the purposes of this appeal that the forms were indeed submitted.


Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

**C**  Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Jerome WALDO, Plaintiff,
v.
Glenn S. GOORD, Acting Commissioner of New York
State Department of Correctional Services; Peter J.
Lacy, Superintendent at Bare Hill Corr. Facility;
Wendell Babbie, Acting Superintendent at Altona Corr.
Facility; and John Doe, Corrections Officer at Bare Hill
Corr. Facility, Defendants.
**No. 97-CV-1385 LEK DRH.**

Oct. 1, 1998.

Jerome Waldo, Plaintiff, pro se, Mohawk Correctional
Facility, Rome, for Plaintiff.

Hon. Dennis C. Vacco, Attorney General of the State of
New York, Albany, Eric D. Handelman, Esq., Asst.
Attorney General, for Defendants.

DECISION AND ORDER

KAHN, District J.

**\*1** This matter comes before the Court following a
Report-Recommendation filed on August 21, 1998 by the
Honorable David R. Homer, Magistrate Judge, pursuant to
28 U.S.C. § 636(b) and L.R. 72.3(c) of the Northern
District of New York.

No objections to the Report-Recommendation have been
raised. Furthermore, after examining the record, the Court
has determined that the Report-Recommendation is not
clearly erroneous. See Fed.R.Civ.P. 72(b), Advisory

Committee Notes. Accordingly, the Court adopts the
Report-Recommendation for the reasons stated therein.

Accordingly, it is

ORDERED that the Report-Recommendation is
APPROVED and ADOPTED; and it is further

ORDERED that the motion to dismiss by defendants is
GRANTED; and it is further

ORDERED that the complaint is dismissed without
prejudice as to the unserved John Doe defendant pursuant
to Fed.R.Civ.P. 4(m), and the action is therefore dismissed
in its entirety; and it is further

ORDERED that the Clerk serve a copy of this order on all
parties by regular mail.

IT IS SO ORDERED.
HOMER, Magistrate J.

REPORT-RECOMMENDATION AND ORDER [FN1]

FN1. This matter was referred to the undersigned
pursuant to 28 U.S.C. § 636(b) and
N.D.N.Y.L.R. 72.3(c).

The plaintiff, an inmate in the New York Department of
Correctional Services ("DOCS"), brought this pro se
action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that
while incarcerated in Bare Hill Correctional Facility
("Bare Hill") and Altona Correctional Facility ("Altona"),
defendants violated his rights under the Eighth and
Fourteenth Amendments.[FN2] In particular, plaintiff alleges
that prison officials maintained overcrowded facilities
resulting in physical and emotional injury to the plaintiff

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

and failed to provide adequate medical treatment for his injuries and drug problem. Plaintiff seeks declaratory relief and monetary damages. Presently pending is defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b). Docket No. 18. For the reasons which follow, it is recommended that the motion be granted in its entirety.

FN2. The allegations as to Bare Hill are made against defendants Goord, Lacy, and Doe. Allegations as to Altona are made against Goord and Babbie.

I. Background

Plaintiff alleges that on August 21, 1997 at Bare Hill, while he and two other inmates were playing cards, an argument ensued, and one of the two assaulted him. Compl., ¶ 17. Plaintiff received medical treatment for facial injuries at the prison infirmary and at Malone County Hospital. *Id.* at ¶¶ 18-19. On September 11, 1997, plaintiff was transferred to Altona and went to Plattsburgh Hospital for x-rays several days later. *Id.* at ¶ 21.

Plaintiff's complaint asserts that the overcrowded conditions at Bare Hill created a tense environment which increased the likelihood of violence and caused the physical assault on him by another inmate. *Id.* at ¶¶ 10-11. Additionally, plaintiff contends that similar conditions at Altona caused him mental distress and that he received constitutionally deficient medical treatment for his injuries. *Id.* at ¶¶ 21-22. The complaint alleges that Altona's lack of a drug treatment program and a dentist or specialist to treat his facial injuries constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments. *Id.* at ¶¶ 22, 27-28.

II. Motion to Dismiss

**\*2** When considering a Rule 12(b) motion, a court must assume the truth of all factual allegations in the complaint and draw all reasonable inferences from those facts in favor of the plaintiff. *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996). The complaint may be dismissed only when "it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Staron v. McDonald's Corp.,* 51 F.3d 353, 355 (2d Cir.1995) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test." *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (citations omitted). This standard receives especially careful application in cases such as this where a pro se plaintiff claims violations of his civil rights. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,*513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994).

III. Discussion

A. Conditions of Confinement

Defendants assert that plaintiff fails to state a claim regarding the conditions of confinement at Bare Hill and Altona. For conditions of confinement to amount to cruel and unusual punishment, a two-prong test must be met. First, plaintiff must show a sufficiently serious deprivation. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citing *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); *Rhodes v. Chapman,* 452 U.S. 347, 348 (1981)(denial of the "minimal civilized measure of life's necessities"). Second, plaintiff must show that the prison official involved was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that the official drew the inference. *Farmer,* 511 U.S. at 837.

1. Bare Hill

In his Bare Hill claim, plaintiff alleges that the overcrowded and understaffed conditions in the dormitory-style housing "resulted in an increase in tension, mental anguish and frustration among prisoners, and dangerously increased the potential for violence." Compl.,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

¶ 11. Plaintiff asserts that these conditions violated his constitutional right to be free from cruel and unusual punishment and led to the attack on him by another prisoner. The Supreme Court has held that double-celling to manage prison overcrowding is not a per se violation of the Eighth Amendment. *Rhodes,* 452 U.S. at 347-48. The Third Circuit has recognized, though, that double-celling paired with other adverse circumstances can create a totality of conditions amounting to cruel and unusual punishment. *Nami v. Fauver,* 82 F.3d 63, 67 (3d Cir.1996). While plaintiff here does not specify double-celling as the source of his complaint, the concerns he raises are similar. Plaintiff alleges that overcrowding led to an increase in tension and danger which violated his rights. Plaintiff does not claim, however, that he was deprived of any basic needs such as food or clothing, nor does he assert any injury beyond the fear and tension allegedly engendered by the overcrowding. Further, a previous lawsuit by this plaintiff raised a similar complaint, that double-celling and fear of assault amounted to cruel and unusual punishment, which was rejected as insufficient by the court. *Bolton v. Goord,* 992 F.Supp. 604, 627 (S.D.N.Y.1998). The court there found that the fear created by the double-celling was not "an objectively serious enough injury to support a claim for damages." *Id.* (citing *Doe v. Welborn,* 110 F.3d 520, 524 (7th Cir.1997)).

**\*3** As in his prior complaint, plaintiff's limited allegations of overcrowding and fear, without more, are insufficient. *Compare Ingalls v. Florio,* 968 F.Supp. 193, 198 (D.N.J.1997) (Eighth Amendment overcrowding claim stated when five or six inmates are held in cell designed for one, inmates are required to sleep on floor, food is infested, and there is insufficient toilet paper) *and Zolnowski v. County of Erie,* 944 F.Supp. 1096, 1113 (W.D.N.Y.1996) (Eighth Amendment claim stated when overcrowding caused inmates to sleep on mattresses on floor, eat meals while sitting on floor, and endure vomit on the floor and toilets) *with Harris v. Murray,* 761 F.Supp. 409, 415 (E.D.Va.1990) (No Eighth Amendment claim when plaintiff makes only a generalized claim of overcrowding unaccompanied by any specific claim concerning the adverse effects of overcrowding). Thus, although overcrowding could create conditions which might state a violation of the Eighth Amendment, plaintiff has not alleged sufficient facts to support such a finding here. Plaintiff's conditions of confinement claim as to Bare

Hill should be dismissed.

2. Altona

Plaintiff also asserts a similar conditions of confinement claim regarding Altona. For the reasons discussed above, plaintiff's claim that he suffered anxiety and fear of other inmates in the overcrowded facility (Compl., ¶¶ 21-22) is insufficient to establish a serious injury or harm.

Plaintiff's second claim regarding Altona relates to the alleged inadequacies of the medical treatment he received. The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The two-pronged *Farmer* standard applies in medical treatment cases as well. *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998). Therefore, plaintiff must allege facts which would support a finding that he suffered a sufficiently serious deprivation of his rights and that the prison officials acted with deliberate indifference to his medical needs. *Farmer,* 511 U.S. at 834.

Plaintiff alleges that the medical treatment available at Altona was insufficient to address the injuries sustained in the altercation at Bare Hill. Specifically, plaintiff cites the lack of a dentist or specialist to treat his facial injuries as an unconstitutional deprivation. Plaintiff claims that the injuries continue to cause extreme pain, nosebleeds, and swelling. Compl., ¶¶ 22 & 26. For the purposes of the Rule 12(b) motion, plaintiff's allegations of extreme pain suffice for a sufficiently serious deprivation. *See Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996).

Plaintiff does not, however, allege facts sufficient to support a claim of deliberate indifference by the named defendants. To satisfy this element, plaintiff must demonstrate that prison officials had knowledge of facts from which an inference could be drawn that a "substantial risk of serious harm" to the plaintiff existed and that the officials actually drew the inference. *Farmer,* 511 U.S. at 837. Plaintiff's complaint does not support, even when liberally construed, any such conclusion. Plaintiff offers

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

no evidence that the Altona Superintendent or DOCS Commissioner had any actual knowledge of his medical condition or that he made any attempts to notify them of his special needs. Where the plaintiff has not even alleged knowledge of his medical needs by the defendants, no reasonable jury could conclude that the defendants were deliberately indifferent to those needs. *See Amos v. Maryland Dep't of Public Safety and Corr. Services,* 126 F.3d 589, 610-11 (4th Cir.1997), *vacated on other grounds,*524 U.S. 935, 118 S.Ct. 2339, 141 L.Ed.2d 710 (1998).

**\*4** Plaintiff's second complaint about Altona is that it offers "no type of state drug treatment program for the plaintiff." Compl., ¶ 22. Constitutionally required medical treatment encompasses drug addiction therapy. *Fiallo v. de Batista,* 666 F.2d 729, 731 (1st Cir.1981); *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 760-61 (3d Cir.1979). As in the *Fiallo* case, however, plaintiff falls short of stating an Eighth Amendment claim as he "clearly does not allege deprivation of essential treatment or indifference to serious need, only that he has not received the type of treatment which he desires." *Id.* at 731. Further, plaintiff alleges no harm or injury attributable to the charged deprivation. Plaintiff has not articulated his reasons for desiring drug treatment or how he was harmed by the alleged deprivation of this service. *See Guidry v. Jefferson County Detention Ctr.,* 868 F.Supp. 189, 192 (E.D.Tex.1994) (to state a section 1983 claim, plaintiff must allege that some injury has been suffered).

For these reasons, plaintiff's Altona claims should be dismissed.

### B. Failure to Protect

Defendants further assert that plaintiff has not established that any of the named defendants failed to protect the plaintiff from the attack by the other inmate at Bare Hill. Prison officials have a duty "to act reasonably to ensure a safe environment for a prisoner *when they are aware* that there is a significant risk of serious injury to that prisoner." *Heisler v. Kralik,* 981 F.Supp. 830, 837 (S.D.N.Y.1997) (emphasis added); *see also Villante v. Dep't of Corr. of City of N.Y.,* 786 F.2d 516, 519 (2d

Cir.1986). This duty is not absolute, however, as "not ... every injury suffered by one prisoner at the hands of another ... translates into constitutional liability." *Farmer,* 511 U.S. at 834. To establish this liability, *Farmer's* familiar two-prong standard must be satisfied.

As in the medical indifference claim discussed above, plaintiff's allegations of broken bones and severe pain from the complained of assault suffice to establish a "sufficiently serious" deprivation. *Id.* Plaintiff's claim fails, however, to raise the possibility that he will be able to prove deliberate indifference to any threat of harm to him by the Bare Hill Superintendent or the DOCS Commissioner. Again, plaintiff must allege facts which establish that these officials were aware of circumstances from which the inference could be drawn that the plaintiff was at risk of serious harm and that they actually inferred this. *Farmer,* 511 U.S. at 838.

To advance his claim, plaintiff alleges an increase in "unusual incidents, prisoner misbehaviors, and violence" (Compl., ¶ 12) and concludes that defendants' continued policy of overcrowding created the conditions which led to his injuries. Compl., ¶ 10. The thrust of plaintiff's claim seems to suggest that the defendants' awareness of the problems of overcrowding led to knowledge of a generalized risk to the prison population, thus establishing a legally culpable state of mind as to plaintiff's injuries. Plaintiff has not offered any evidence, however, to support the existence of any personal risk to himself about which the defendants could have known. According to his own complaint, plaintiff first encountered his assailant only minutes before the altercation occurred. Compl., ¶ 17. It is clear that the named defendants could not have known of a substantial risk to the plaintiff's safety if the plaintiff himself had no reason to believe he was in danger. *See Sims v. Bowen,* No. 96-CV-656, 1998 WL 146409, at *3 (N.D.N.Y. Mar.23, 1998)(Pooler, J.)("I conclude that an inmate must inform a correctional official of the basis for his belief that another inmate represents a substantial threat to his safety before the correctional official can be charged with deliberate indifference"); *Strano v. City of New York,* No. 97-CIV-0387, 1998 WL 338097, at *3-4 (S.D.N.Y. June 24, 1998) (when plaintiff acknowledged attack was "out of the blue" and no prior incidents had occurred to put defendants on notice of threat or danger, defendants could not be held aware of any substantial risk

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

of harm to the plaintiff). Defendants' motion on this ground should, therefore, be granted.

### IV. Failure to Complete Service

**\*5** The complaint names four defendants, including one "John Doe" Correctional Officer at Bare Hill. Defendants acknowledge that service has been completed as to the three named defendants. Docket Nos. 12 & 13. The "John Doe" defendant has not been served with process or otherwise identified and it is unlikely that service on him will be completed in the near future. *See* Docket No. 6 (United States Marshal unable to complete service on "John Doe"). Since over nine months have passed since the complaint was filed (Docket No. 1) and summonses were last issued (Docket entry Oct. 21, 1997), the complaint as to the unserved defendant should be dismissed without prejudice pursuant to Fed.R.Civ.P. 4(m) and N.D .N.Y.L.R. 4.1(b).

### V. Conclusion

WHEREFORE, for the reasons stated above, it is

RECOMMENDED that defendants' motion to dismiss be GRANTED in all respects; and

IT IS FURTHER RECOMMENDED that the complaint be dismissed without prejudice as to the unserved John Doe defendant pursuant to Fed.R.Civ.P. 4(m) and N.D.N.Y.L.R. 4.1(b); and it is

ORDERED that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by regular mail, upon parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v.*

*Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,1998.
Waldo v. Goord
Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

2016 WL 858916
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Michele Ellen Scalpi, Plaintiff,
v.
Town of East Fishkill, Officer Tina Amorim,
Sergeant Eric Fields, Frederick D. Romig,
County of Dutchess, William Grady,
Melissa Knapp Pasquale, County of Orange,
Commissioner Barbara J. Fiala, Governor
Andrew Cuomo, Steven K. Patterson, Defendants.

Case No. 14-CV-2126 (KMK)
|
Signed 02/26/2016
|
Filed 02/29/2016

**Attorneys and Law Firms**

Michelle Ellen Scalpi, West Haven, CT, Pro se Plaintiff.

Susan Z. Stockburger, Esq., Langdon C. Chapman, Esq., Orange County Department of Law, Goshen, NY, Counsel for Defendant Orange County.

OPINION & ORDER

KENNETH M. KARAS, District Judge

**\*1** Michelle Ellen Scalpi ('Plaintiff'), proceeding pro se, filed the instant Amended Complaint pursuant to 42 U.S.C. § 1983, alleging civil rights violations against Orange County ('the County' or 'Moving Defendant ') and other municipalities and public officials. (Am. Compl. (Dkt. No. 75).) Before the Court is Moving Defendant's Motion To Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ('Motion'). (Dkt. No. 100). For the following reasons, the Motion is granted.

I. Background

A. Factual Background

The factual allegations that follow are derived from Plaintiff's Amended Complaint. While the Court will sometimes refer to Plaintiff's contentions as 'alleged,' it nonetheless treats them as true for purposes of the instant Motion.

Plaintiff 'was pulled over [in] February of 2011' for driving without a license on a public roadway in the Town, in violation of New York State Vehicle and Traffic Law ('VTL') § 511. (Am. Compl. 8 (Dkt. No. 75); *see also id.* Ex. E (VTL § 511).) [1] She claims that her arrest and subsequent prosecution were intrinsically invalid because the state law imposing the driver's license requirement is invalid. (*See, e.g., id.* at 17-18 ('Without an enacting clause the laws referenced ... have no official evidence that they are from an authority which the individual is subject to or required to obey.' (italics omitted)).) During the course of the criminal prosecution stemming from this charge, Plaintiff failed to appear for a required court appearance on April 24, 2013 at the Town of East Fishkill Justice Court, which resulted in the issuance of a bench warrant for her arrest, signed by Defendant Justice Frederick D. Romig ('Justice Romig'). (*Id.* at 9.)

On March 17, 2014, Plaintiff was driving in Columbia County, New York when she was pulled over by a Town of East Fishkill police officer and arrested pursuant to that bench warrant. (*Id.* at 8-9.) [2] The officer, later identified as Maria Amorim of the East Fishkill Police Department ('Amorim'), allegedly searched Plaintiff in a 'rough and excessive' manner that caused Plaintiff pain and discomfort. (*Id.* at 9.) Upon being transported to the East Fishkill Police Department, Plaintiff requested to use the bathroom facilities, and, though her request was initially denied, Amorim later 'granted permission reluctantly.' (*Id.* at 9-10.) When Amorim went to remove her handcuffs, Plaintiff suffered 'extreme shooting pain in [her] left shoulder' as Amorim twisted her left arm, forced it to the side, and quickly pushed it upwards. (*Id.* at 10.) Plaintiff used bathroom and then requested but was repeatedly denied a sanitary napkin. (*Id.* at 10-11.) Plaintiff was also denied water, despite 'several times complaining of dizziness and dehydration,' until just prior to leaving the East Fishkill Police Department. (*Id.* at II.) [3]

**\*2** Plaintiff 'was then transported to Montgomery NYS Trooper Barracks' for 'another warrant from the Town

of Newburgh Court,' also relating to a prior violation of VTL § 511. (*Id.*) There, she was again allegedly denied water, food, use of bathroom facilities, and a sanitary napkin. (*Id.* at 11-12.) Plaintiff was taken to the Town of Newburgh Court, where she 'was granted bail of $400.00.' (*Id.* at 12.) However, she was not allowed to post bail at the courthouse, despite having 'family in court with bail in hand,' and instead was sent to the Orange County Jail ('Jail'), arriving at approximately 7:45 p.m. (*Id.*) Plaintiff requested water and use of the bathroom, but, despite her complaints of dizziness, these requests were denied. (*Id.*) Eventually Plaintiff was granted permission to use the bathroom facilities, having explained she was in 'pain from holding it for hours.' (*Id.*) Plaintiff also complained of a painful 'burning sensation in [her] gentile [sic] area.' (*Id*) Though her appeals were 'denied several times,' she ultimately received a sanitary napkin from a female corrections officer at the Jail. (*Id.* at 12-13.)

According to the Amended Complaint, Plaintiff 'sat in a 'holding cell with no toilet paper,... food, water[,] or medical care for [her] gentile [sic] area, dizziness[,] or hurt shoulder' for several hours. (*Id.* at 13.) She was released from the Jail later that night. (*Id.*) In the subsequent days, Plaintiff visited the hospital twice, saw her primary care physician, and went to two orthopedic specialists to address '[v]aginal pain, shoulder pain[,] and dehydration.' (*Id.* at 13, 15.)

### B. Procedural History

Plaintiff commenced the instant Action on March 26, 2014 against Orange County, Dutchess County, Dutchess County District Attorney William Grady ('Grady'), Dutchess County Assistant District Attorney Melissa Knapp Pasquale, the Town of East Fishkill, Amorim, Sergeant Eric Fields, Justice Romig, Commissioner Barbara J. Fiala, Governor Andrew Cuomo, and Steven K. Patterson. (Dkt. No. 1.) Thereafter, counsel for all named defendants filed motions to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b). (Dkt. Nos. 40, 42, 47, 52.) Without rendering a decision on these motions, the Court granted Plaintiff's request for leave to amend her Complaint. (Dkt. Nos. 72, 74.) Plaintiff accordingly filed her Amended Complaint on December 31, 2014. (Dkt. No. 75.)

Pursuant to a scheduling order adopted at a pre-motion conference held before the Court on March 10, 2015, (Dkt. No. 88), Moving Defendant filed its Motion To

Dismiss and supporting papers on April 10, 2015, (Dkt. Nos. 100-02), Plaintiff filed her opposition papers on June 1, 2015, (Dkt. No. III), and Moving Defendant filed its reply on June 9, 2015, (Dkt. No. 120). [4]

## II. Discussion

### A. Standard of Review

'While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alterations and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure 'demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). 'Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.' *Id.* (alterations and internal quotation marks omitted). Instead, a complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.' *Twombly*, 550 U.S. at 555. Although 'once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint, ' *id.* at 563, and a plaintiff must allege 'only enough facts to state a claim to relief that is plausible on its face,' *id.* at 570, if a plaintiff has not 'nudged [his or her] claim [ ] across the line from conceivable to plausible, the[ ] complaint must be dismissed,' *id.*; *see also Iqbal*, 556 U.S. at 679 ('Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'' (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678-79 ('Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.').

**\*3** In addition, 'when ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint.' *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Further, '[f]or the purpose of resolving [a] motion to dismiss, the [c]ourt... draw[s] all reasonable inferences in favor of the plaintiff.' *Daniel v. T&M Prot. Res., Inc.,* 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC,* 699 F.3d 141, 145 (2d Cir. 2012)). 'In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.' *Leonard F. v. Israel Disc. Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Hendrix v. City of N.Y.,* No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

Where, as here, a plaintiff proceeds pro se, the court must 'construe [ ] [her] [complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s].' *Sykes v. Bank of Am.,* 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted); *see also Farzan v. Wells Fargo Bank, N.A.,* No. 12-CV-1217, 2013 WL 6231615, at * 12 (S.D.N.Y. Dec. 2, 2013) (same), *aff'd sub nom. Farzan v. Genesis 10,* 619 F. App'x 15 (2d Cir. 2015). In deciding a motion to dismiss a pro se complaint, it is appropriate to consider 'materials outside the complaint to the extent that they are consistent with the allegations in the complaint,' *Alsaifullah v. Furco,* No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including 'documents that a pro se litigant attaches to [her] opposition papers,' *Agu v. Rhea,* No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010); *see also Walker v. Schult,* 717 F.3d 119, 122 n.l (2d Cir. 2013) (noting that a court may consider 'factual allegations made by a pro se party in his papers opposing the motion' (italics omitted)). However, 'the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law.' *Bell v. Jendell,* 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga Cty.,* 517 F.3d 601, 605 (2d Cir. 2008) ('[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them.' (italics and internal quotation marks omitted)).

### B. Analysis

Plaintiff broadly asserts a variety of constitutional claims against the individuals and municipalities named in her Amended Complaint. (*See* Am. Compl. 2.) As to Orange County specifically, Plaintiff seeks 'compensatory and punitive damages ... for mistreatment, deprivation, unlawful detention, strip search, humiliation, embarrassment, lack of health care, lack of necessity such as water, food[,] and sanitary needs, pain and suffering, deprivation of lights, emotional distress[,] and mental anguish.' (Am. Compl. 88.) In interpreting the Amended Complaint to raise the strongest arguments that it may suggest, *see Sykes,* 723 F.3d at 403, the Court recognizes claims for unlawful imprisonment, (*see, e.g.,* Am. Compl. 28), unconstitutional conditions of confinement, (*see, e.g., id.* at 27-28), and conspiracy to violate Plaintiff's constitutional rights, (*see, e.g., id.* at 74). Regardless of the particular constitutional fouls Plaintiff is asserting, her allegations against the County, 'a municipality of New York State,' (*id.* at 6), cannot survive the instant Motion because she fails both to satisfy the requirements of *Monell v. Department of Social Services of City of New York,* 436 U.S. 658 (1978), and to state any viable claim for a rights violation,

### 1. *Monell* Liability

**\*4** A municipal defendant 'cannot be held liable under § 1983 on a respondeat superior theory.' *Monell,* 436 U.S. at 691 (italics omitted); *see also Jones v. Town of E. Haven,* 691 F.3d 72, 80 (2d Cir. 2012) (reaffirming that 'a municipality cannot be held liable on a respondeat superior basis for the tort of its employee' (italics omitted)). Rather, for a plaintiff to prevail on a § 1983 claim against a municipal employer, she must satisfy the requirements set forth in *Monell* and its progeny, which adhere to the well-settled principle that 'Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort.' *Monell,* 436 U.S. at 691; *see also Hunter v. City of N.Y.,* 35 F. Supp. 3d 310, 322 (E.D.N.Y. 2014) ('In order to sustain a claim for relief pursuant to § 1983 against a municipal defendant, a plaintiff must show the existence of an official policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right.').

A plaintiff may satisfy the 'policy or custom' requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of N.Y.,* 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted). In addition, a plaintiff must establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury. *See Roe v. City of Waterbury,* 542 F.3d 31, 37 (2d Cir. 2008) (holding that 'a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury' (internal quotation marks omitted)); *Tieman v. City of Newburgh,* No. 13-CV-4178, 2015 WL 1379652, at * 12 (S.D.N.Y. Mar. 26, 2015) ('[T]here must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation' (internal quotation marks omitted)); *Johnson v. City of N.Y.,* No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that 'a plaintiff must establish a causal connection—an affirmative link—between the [municipal] policy and the deprivation of his [or her] constitutional rights' (internal quotation marks omitted)).

'Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality.' *Tieman,* 2015 WL 1379652, at * 12 (alteration and internal quotation marks omitted); *see also City of Okla. City v. Tuttle,* 471 U.S. 808, 823-24 (1985) ('Proof of a single incident of unconstitutional activity is not sufficient

to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy ... [that] can be attributed to a municipal policymaker.'); *Brogdon v. City of New Rochelle,* 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ('A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.'). There are two circumstances that courts have expressly identified as constituting a municipal policy: 'where there is an officially promulgated policy as that term is generally understood,' and 'where a single act is taken by a municipal employee who, as a matter of [s]tate law, has final policymaking authority in the area in which the action was taken.' *Newton v. City of N.Y.,* 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008) (footnote omitted). 'A municipal 'custom,' on the other hand, need not receive formal approval by the appropriate decisionmaker, ' *id.,* but nonetheless 'may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law,' *Kucharczyk v. Westchester Cty.,* 95 F. Supp. 3d 529, 539 (S.D.N.Y. 2015) (internal quotation marks omitted); *see also Tieman,* 2015 WL 1379652, at * 16 ('To prevail on this theory of municipal liability,... a plaintiff must prove that the custom at issue is permanent and well-settled.').

**\*5** Construed liberally, the Amended Complaint alleges two theories of liability that seek to satisfy the 'policy and custom' requirement: (a) Orange County had a formal policy 'to [v]iolate clearly established law'; and (b) Orange County failed to properly train its employees. (*See* Am. Compl. 23, 26.) [5]

### a. Formal Policy

Although Plaintiff broadly alleges an Orange County 'custom, policy, or practice' of depriving individuals of their rights, (*id.* at 23), she fails to present any facts about any formal policy or custom that could satisfy the requirements of *Monell.* In fact, many of her allegations against Orange County seek to establish liability 'under the '[d]octrine of [r]espondent [sic] [s]uperior for the acts of [its] employees committed within the scope of their employee duties.' (*Id.* italics omitted); *see also id.* at 26 (alleging that 'Orange County is responsible under respondent [sic] superior as [its] policies go against [f]ederal [l]aw').) This assertion is unavailing, for, as

noted above, it is well established that, under § 1983, 'a municipality cannot be held liable solely for the acts of others.' *Los Angeles Cty. v. Humphries,* 562 U.S. 29, 36 (2010) (internal quotation marks omitted); *see also Jones,* 691 F.3d at 80. As a legal conclusion, and an incorrect one at that, Plaintiff's contention that Orange County is 'liable' and 'responsible for the actions under [its] jurisdiction by any and all agents,' (Am. Compl. 74), warrants no deference by the Court. Alleged conduct by a limited number of employees, (*see, e.g.,* Pl's Opp'n to Mot. ('Pl.'s Opp'n ') at unnumbered 3 (Dkt. No. 111) ('Medical records indicate two severe injuries ignored by the [C]ounty employees ....')), simply cannot support municipal liability, *see Brogdon,* 200 F. Supp. 2d at 427; *cf. Connick v. Thompson,* 563 U.S. 51, 60 (2011) (noting that, under § 1983, governmental bodies are not vicariously liable for their employees' actions).

Apart from this reliance on the doctrine of respondeat superior, Plaintiff offers only sweeping claims that Moving Defendant 'enforce[es] policies in lieu of well[-]established law.' (Am. Compl. 23.) While Plaintiff alleges that 'Orange County ... [has] displayed patterns depicted in each and every Cause of Action herein,' (*id.* at 74), such bare assertions, without more, cannot support municipal liability. And in the instant Action, the Amended Complaint continually fails to offer more.

For example, Plaintiff asserts that Orange County 'created policy and custom to allow pretrial detentions against orders of the [j]udiciary [b]ranch. ' (*Id.* at 27; *see also id.* at 62 (same),) While more specifically contending that 'Orange County failed to accept bail until [the Jail] admitted Plaintiff and secured funding for that admission,' (Pl.'s Opp'n at unnumbered 5), the Amended Complaint presents no factual support for these bare references to an unidentified and undefined municipal policy, *see Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987) (holding that 'complaints relying on the civil lights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning'). In essence, Plaintiff does no more than complain of 'waiting for nearly 5 hours' at the Jail, (Am. Compl. 27), and '[a] *Monell* claim cannot go forward based on conclusory claims regarding a single incident without more evidence that connects this incident to a municipal policy or practice,' *Pittman v. City of N.Y.,* No. 14-CV-4140, 2014 WL 7399308, at *7 (E.D.N.Y. Dec. 30,

2014); *see also 5 Borough Pawn, LLC v. City of N.Y.,* 640 F. Supp. 2d 268, 300 (S.D.N.Y. 2009) (dismissing a *Monell* claim where the 'plaintiff's fail[ed] to allege any facts showing that there is a [c]ity policy—unspoken or otherwise—that violates the Federal Constitution'). [6] The Court thus finds insufficient facts to give rise to an inference that the allegedly excessive detention was the result of any official municipal policy or custom sufficient to subject the County to liability. *See Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 124 (2d Cir. 1991) (affirming 'that an allegation of municipal policy or custom would be insufficient if wholly conclusory'); *Gordon v. City of N.Y.,* No. 10-CV-5148, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012) (dismissing a *Monell* claim where the 'allegation is unsupported by anything other than the facts of what occurred in his particular case').

**\*6** In an additional effort to satisfy the requirements of *Monell,* Plaintiff asserts that the Jail 'acted with deliberate indifference ... which is policy, custom[,] and pattern set forth by [the] County.' (Am. Compl. 27,) Again, however, the mere assertion of the existence of policy is not enough. *See Maynard v. City of N.Y.,* No. 13-CV-3412, 2013 WL 6667681, at *4 (S.D.N.Y. Dec. 17, 2013) ('Conclusory allegations that there was such a policy or custom, without identifying or alleging supporting facts, is insufficient to state a claim.'); *McAllister v. N.Y.C. Police Dep't,* 49 F. Supp. 2d 688, 705 (S.D.N.Y. 1999) ('Conclusory allegations of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a *Monell* claim, absent evidence to support such an allegation.'). According to the Amended Complaint, the Jail '[subjected] [Plaintiff] to strip searches, medical neglect, neglect of necessities, [and] left [her] suffering in extreme pain far measured above 'discomfort' with a severe infection of the genitals as well as a ruptured shoulder with possible fractures.' (Am. Compl. 27; *see also id* at 61 (same).) Accepting these allegations as true, the Court nonetheless cannot plausibly infer the existence of any formal custom or policy of constitutionally inadequate conditions of confinement; there simply are not enough specific allegations from which to do so. *See Gordon,* 2012 WL 1068023, at *4; *see also 5 Borough Pawn,* 640 F. Supp. 2d at 299 (concluding that the 'plaintiff's' pleading ... does not unlock the doors of discovery because their assertion that the [c]ity has an unconstitutional policy is based on nothing more than their unsupported supposition' (citation and internal quotation marks omitted)). [7] Thus, without more, such

'naked assertions' of unconstitutional conditions will not sustain a cause of action against the County. *See Iqbal,* 556 U.S. at 678 (alteration omitted).

Lastly, Plaintiff appears to allege VTL § 511 as another municipal policy giving rise to the purported violations of her constitutional rights. (*See* Am. Compl. 29) ('The policy or custom in which the municipality acted on is unconstitutional on its face.' (citing Ex. F (Plaintiff's DMV Abstract)).) In challenging the validity of that legislation, the Amended Complaint contends that 'Orange County['s] customs and policies ... allow for the charges and imprisonment of [individuals] without enacted law.' (*Id.* at 28; *see also id.* at 44 (alleging that 'the policy endorsed by ... [the] County ... reflects the use of charging individuals without law').) That argument necessarily fails. For one, as discussed by this Court in separate Opinions stemming from the Amended Complaint, VTL § 511 was indeed properly enacted (and therefore enforceable against Plaintiff). Yet even assuming, arguendo, that the underlying legislation was 'un-enacted,' (Am. Compl. 21), VTL § 511 was created by the New York State legislature, *not* by the County. *See, e.g.,* 2006 Sess. Law News of N.Y. ch. 746. A state statute generally cannot be considered a municipal policy for purposes of *Monell,* even if enforced by municipal employees. *See Vives v. City of N.Y.,* 524 F.3d 346, 353 (2d Cir. 2008) (holding 'that a mere municipal directive to enforce all state and municipal laws [does not] constitute[ ] a city policy to enforce a particular unconstitutional statute'); *accord Whitesel v. Sengenberger,* 222 F.3d 861, 872 (10th Cir. 2000) (emphasizing 'that the [municipal entity] cannot be liable for merely implementing a policy created by the state [entity]'). For these reasons, VTL § 511 does not constitute a formal policy that can subject Orange County to liability.

On the whole, the Amended Complaint is devoid of factual support for Plaintiff's assertion of a formal policy. Therefore, while Plaintiff alleges that '[t]his policy, custom and pattern caused unnecessary humiliation, pain, suffering and mental distress,' (Am. Compl. 27), the Court finds no particular policy or custom to sustain municipal liability against the County.

b. Failure to Train

As another potential theory of liability under *Monell,* Plaintiff contends that the County is 'liable for improper training, licensing these men and women to abuse the public at will with no sense of compassion or liability.' (*Id.* at 23.) However, given that a 'municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train, ' *Connick,* 563 U.S. at 61; *see also Tuttle,* 471 U.S. at 822-23 (noting that 'a 'policy' of 'inadequate training'' is 'far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*'), this sort of conclusory allegation fails to satisfy the 'policy and custom' requirement necessary to hold the County liable, *see Tieman,* 2015 WL 1379652, at *22 ('To state a claim for municipal liability based on failure to train, [a] [p]laintiff ... must allege facts that support an inference that the municipality failed to train its [employees], that it did so with deliberate indifference, and that the failure to train caused his [or her] constitutional injuries.'); *Simms v. City of N.Y.,* No. 10-CV-3420, 2011 WL 4543051, at *2 n.3 (E.D.N.Y. Sept. 28, 2011) (noting that 'courts ... have generally required that plaintiff's provide more than a simple recitation of their theory of liability, even if that theory is based on a failure to train '), *aff'd,* 480 F. App'x 627 (2d Cir. 2012).

**\*7** Here, Plaintiff broadly alleges that 'Orange County failed and/or neglected to properly train and supervise its employees ... with respect to individual rights as protected by the Constitution[,] [which] has been made evident by the several severe abuse(s) and damage(s) sustained by [Plaintiff]. ' (Am. Compl. 22.) This, however, is far from enough to sustain municipal liability based on a purported failure to train. *See Santos v. N.Y. City,* 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012) ('Because the existence of a municipal policy or practice, such as a failure to train or supervise, cannot be grounded solely on the conclusory assertions of the plaintiff, [the plaintiff's] claims against the [c]ity are dismissed with prejudice.' (citation omitted)); *Johnson,* 2011 WL 666161, at *4 (finding the plaintiff's 'unsupported conclusory allegation that the [c]ity failed to train the individual [defendants]' insufficient to establish municipality liability); *Bradley v. City of N.Y.,* No. Q8-CV-1106, 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009) ('The [c]omplaint's conclusory, boilerplate language —that the [c]ity 'failed to adequately train, discipline, and supervise' employees and 'failed to promulgate and put into effect appropriate rules and regulations applicable to the duties and behavior' of its employees—is insufficient

to raise an inference of the existence of a custom or policy, let alone that such a policy caused [the] [p]laintiff to be arrested without probable cause.' (alterations and citation omitted)). [8]

Because Plaintiff fails to adequately allege that the County acted pursuant to an official policy or custom, the Court finds that the Amended Complaint does not comply with the requirements of *Monell* and therefore cannot establish municipal liability. Accordingly, Orange County is entitled to dismissal of any claims against it.

### 2. Failure to State a Claim

*Monell* aside, the Amended Complaint fails to state any viable claim against the County. Plaintiff's bare 'labels and conclusions' of unlawful imprisonment, unconstitutional conditions of confinement, and conspiracy fall short of raising her right to relief above the speculative level. *Twombly,* 550 U.S. at 555. [9]

### a. Unlawful Imprisonment

**\*8** The Amended Complaint alleges that the Jail 'fail[ed] to collect the bail from parties waiting for nearly 5 hours[,] at which time [Plaintiff] was unlawfully incarcerated.' (Am. Compl. 27.) However, Plaintiff's bare assertion that '[t]he [u]nlawful [i]mprisonment of [Plaintiff] is clear' does not make it so. (*Id.* at 65.) [10] Rather, the Court finds Plaintiff has failed to plead a violation of her constitutional rights.

'[P]rolonged post-arrest detention implicates the Fourth Amendment. ' *Mikulec v. Town of Cheektowaga,* 909 F. Supp. 2d 214, 227 (W.D.N.Y. 2012) (citing *Russo v. City of Bridgeport,* 479 F.3d 196, 209 (2d Cir. 2007)); *see also Bryant v. City of N.Y.,* 404 F.3d 128, 136 (2d Cir. 2005) (holding that, in considering allegations of prolonged post-arrest detention, courts 'turn to Fourth Amendment principles'); *cf. Ambrose v. City of N.Y.,* 623 F. Supp. 2d 454, 474 n.9 (S.D.N.Y. 2009) (noting that the '[p]laintiff's allegations of false arrest... state a claim *only* under the Fourth Amendment, and not under the Due Process Clause of the Fourteenth Amendment'). A jurisdiction that releases the accused or 'provides judicial determinations of probable cause within 48 hours of arrest

will, as a general matter, comply with the promptness requirement of *Gerstein [v. Pugh,* 420 U.S. 103 (1975)].' *Cty. of Riverside v. McLaughlin,* 500 U.S. 44, 56 (1991). Thus, 'a delay of less than 48 hours is presumptively valid.' *Mikulec,* 909 F. Supp. 2d at 227.

Here, Plaintiff's Fourth Amendment rights were not violated. While stating the obvious, it must be noted that a roughly five-hour delay does not begin to approach the 48-hour rule articulated in *County of Riverside.* [11] Moreover, the Amended Complaint fails to put forth any of the impermissible reasons for a delay outlined by the Supreme Court. *See Cty. of Riverside,* 500 U.S. at 56 ('Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake.'). Rather, Plaintiff merely complains that the '[Jail] needlessly deprived [Plaintiff] of her liberty while refusing to accept bail and release [her] ....' (Am. Compl. 62 (first alteration in original)). To be clear, a roughly five-hour detention is not per se reasonable, but without factual allegations that Plaintiff was detained for longer than necessary, the presumption of validity applies. *See Mikulec,* 909 F. Supp. 2d at 227 ('[W]ithout evidence tending to show that officers detained [the plaintiff] for longer than necessary, the presumption of validity applies.'). The Amended Complaint thus fails to sustain a claim for unlawful imprisonment.

### b. Unconstitutional Conditions of Confinement

**\*9** Plaintiff also alleges that she suffered unconstitutional conditions of confinement. To state such a claim, a detainee must meet the requirements of the deliberate indifference standard by alleging that '(1) objectively, the deprivation the [detainee] suffered was sufficiently serious that he [or she] was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind ..., such as deliberate indifference to [detainee] health or safety.' ' *Walker,* 717 F.3d at 125 (third alteration in original) (internal quotation marks omitted); *see also Randle v. Alexander,* 960 F. Supp. 2d 457, 470 (S.D.N.Y. 2013) (applying deliberate indifference standard to conditions of confinement claim). [12] The objective element requires a prisoner to show 'that the conditions of his [or her] confinement violate contemporary standards of decency.' *Phelps v. Kapnolas,*

308 F.3d 180, 185 (2d Cir. 2002); *see also Anderson v. Coughlin,* 757 F.2d 33, 34-35 (2d Cir. 1985) (explaining that the objective element requires that the plaintiff demonstrate the conditions under which he or she was confined resulted 'in unquestioned and serious deprivations of basic human needs' (internal quotation marks omitted)). As for the second element, namely, an accused prison official's subjective intent, 'a plaintiff must show something more than mere negligence.' *Cuoco v. Moritsugu,* 222 F.3d 99, 106 (2d Cir. 2000) (internal quotation marks omitted).

In the instant Action, Plaintiff fails to state a claim for unconstitutional conditions of confinement because the alleged deprivations were, objectively speaking, simply not serious enough to violate due process. The Amended Complaint asserts that the County '[d]eprived [Plaintiff] of food, water[,] and sanitary needs while in custody' but also makes clear that these conditions lasted only 'for several hours.' (Am. Compl. 89; *see also id.* at 11 (alleging Plaintiff 'was without water or sanitary needs for several hours in custody'); *cf. id.* at 27 (alleging Plaintiff was at the Jail 'waiting for nearly 5 hours').) As such, the short duration of these alleged deprivations leaves Plaintiff far short of satisfying the objective component of her claim. *See, e.g., Dillon v. City of N.Y.,* No. 12-CV-6746, 2003 WL 3776252, at *6 (S.D.N.Y. July 18, 2013) (holding that 'a deprivation of access to shower and toothpaste for one morning ... plainly do[es] not rise to the level of an objective [constitutional] violation'); *Beckford v. N.Y. State Office of Mental Health,* No. 06-CV-561, 2010 WL 1816689, at *12 (W.D.N.Y. May 3, 2010) (determining that a 22-hour deprivation of water and electricity does not rise to the level of a constitutional violation); *Jones v. Marshall,* No. 08-CV-562, 2010 WL 234990, at *3 (S.D.N.Y. Jan. 19, 2010) (noting 'case law has established that temporary denial of a bathroom does not establish the existence of an objective injury for purposes of [a conditions-of-confinement] claim'); *Gardner v. Mental Health Unit of Sullivan Corr. Facility,* No. 07-CV-5535, 2009 WL 1834382, at *2 (S.D.N.Y. June 17, 2009) (holding that 'denying a prisoner the opportunity to shower for seven days and withholding toiletries, while uncomfortable, does not endanger an inmate's health and safety '); *Zimmerman v. Seyfert,* No. 03-CV-1389, 2007 WL 2080517, at *27 (N.D.N.Y. July 19, 2007) (holding that the plaintiff having 'gone [11] hours without eating does not rise to the level of a constitutional claim'); *Bourdon v. Roney,* No. 99-CV-769, 2003 WL 21058177, at *11 (N.D.N.Y. Mar. 6, 2003) (report and recommendation) (holding that a three-hour period without bathroom privileges and water does not constitute a constitutional violation). Put simply, 'several hours' without food, water, sanitary napkins, and access to bathroom facilities, while uncomfortable, does not rise to the level of a constitutional violation. *See Calhoun v. N.Y.C. Dep't. of Corr.,* No. 10-CV-182, 2014 WL 144659, at *6 (S.D.N.Y. Jan. 14, 2014) (report and recommendation) (holding that a '[§] 1983 claim will not lie for merely unpleasant prison conditions').

**\*10** Plaintiff also asserts that she 'had to endure pain from two injuries without treatment by the [J]ail ....' (Am. Compl. 28.) According to the Amended Complaint, these injuries involved her genital area, (*see id.* (alleging that 'when [Plaintiff] complained of vaginal pain and burning[,] she was told she had to wait, allowing the infection to spread and become worse')), and her shoulder, (*see id.* ('The [J]ail also ignored [Plaintiff] about her shoulder [hurting], later to find out the shoulder was ruptured with [a] possible fracture.')). [13] These alleged injuries, however, are not sufficiently serious under the objective prong of the deliberate indifference standard. Rather than being of the nature of 'death, degeneration, or extreme pain,' *Mikulec,* 909 F. Supp. 2d at 223 (internal quotation marks omitted), Plaintiff's injuries, according to her medical records, were treatable with medication and without any procedures, (*see* Medical Records 30-31, 37; *see also* Am. Compl. 15 (noting she 'was prescribed medications to be made comfortable ')). Plaintiff does not allege otherwise or that she suffered any permanent harm. *See, e.g., Sloane v. Borawski,* 64 F. Supp. 3d 473, 494 (W.D.N.Y. 2014) (finding that, even if the defendant did ignore the claimed 'broken ribs, ankle fracture[,] and lower right-side back injury,' the 'plaintiff cannot meet the objective component' for a deliberate indifference claim); *Dallio v. Hebert,* 678 F. Supp. 2d 35, 44 (N.D.N.Y. 2009) (holding that two black eyes, bruising in the kidney area, kick marks, open lacerations, headache, and numbness did not constitute serious medical need under the deliberate indifference standard); *Johnson v. Wright,* 477 F. Supp. 2d 572, 575-76 (W.D.N.Y. 2007) (finding the prisoner's torn meniscus, for which he was treated by surgery, was not 'a serious medical need' for Eighth Amendment purposes'), *aff'd,* 324 F. App'x 144 (2d Cir. 2009). [14] Moreover, though she alleges 'extreme pain far measured above discomfort,' (Am. Compl. 27 (internal quotation marks omitted)), 'subjective complaints of pain are not, in and of

themselves, sufficient to establish the existence of a serious medical need,' *Goodwin v. Kennedy,* No. 13-CV-1774, 2015 WL 1040663, at * 13 (E.D.N.Y. Mar. 10, 2015) (alterations and internal quotation marks omitted); *see also Evan v. Manos,* 336 F. Supp. 2d 255, 260 (W.D.N.Y. 2004) (holding that 'an assertion of pain sensation alone, unaccompanied by any large medical complications, does not amount to a serious medical need under the Eighth Amendment' (alterations and internal quotation marks omitted)).

Because none of Plaintiff's allegations satisfy the objective element of the deliberate indifference standard, the Amended Complaint fails to satisfy the subjective inquiry as well. *See Jabbar v. Fischer,* 683 F.3d 54, 58 (2d Cir. 2012) (holding that deliberate indifference 'cannot be plausibly alleged' where the plaintiff failed to establish an excessive risk to inmates' safety for purposes of the objective prong). Thus, even apart from Plaintiff's failure to satisfy the requirements of *Monell,* the Amended Complaint cannot state a claim for unconstitutional conditions of confinement.

### c. Conspiracy

In addition, Plaintiff conclusorily alleges that the County, along with other defendants named in the Amended Complaint, 'conspired to harm, defame, extort, humiliate, injure, harass[,] and victimize [her] under color of law.' (Am. Compl. 74; *see also id.* at 24 (alleging that the County 'conspired ... to defame, kidnap, torture[,] and incarcerate [Plaintiff] with *no* valid cause of action before the East Fishkill Court or any other court').) With no further allegations of, let alone reference to, a conspiracy, the Court finds this claim to be insufficiently plead. *See Ciambriello v. Cty. of Nassau,* 292 F.3d 307, 325 (2d Cir. 2002) (dismissing conspiracy allegations where they were found to be 'strictly conclusory'); *Romer v. Morgenthau,* 119 F, Supp. 2d 346, 363 (S.D.N.Y. 2000) (holding that a plaintiff, in order to withstand a motion to dismiss, 'must provide some factual basis supporting a meeting of the minds, such as that [the] defendants entered into an agreement, express or tacit, to achieve the unlawful end' as well as 'some details of time and place and the alleged effects of the conspiracy' (internal quotation marks omitted)).

### III. Conclusion

**\*11** For the above reasons, the Court grants Moving Defendant's Motion To Dismiss with prejudice.[15] The Clerk of the Court is respectfully directed to terminate the pending Motion. (Dkt.No. 100).

SO ORDERED.

**All Citations**

Slip Copy, 2016 WL 858916

Footnotes

1   For the sake of clarity, the Court cites to the page numbers of Plaintiff's Amended Complaint, rather than the inconsistent paragraph numbering.
        The Amended Complaint includes a number of attachments with inconsistent pagination. (*See* Dkt. No. 75-1.) To avoid confusion, the Court's references to page numbers of that filing correspond to the ECF page numbers stamped on the top of each page.
2   For the sake of clarity, the Court cites to the page numbers of Plaintiff's Amended Complaint, rather than the inconsistent paragraph numbering.
3   Though the Court provides these factual allegations by way of background, it bears noting that Plaintiff's arrest and subsequent detention at the East Fishkill Police Department occurred in Dutchess, not Orange, County. It is only the events alleged by Plaintiff to have taken place at the Jail that implicate Moving Defendant.
4   The Court resolves the Motions to Dismiss of the other named defendants in separate Opinions issued contemporaneously with this Opinion.
5   Though her allegations against Dutchess County seem to allege a theory of liability based on Grady's purported policymaking authority, (*see* Am. Compl. 88), Plaintiff does not assert the existence of an Orange County policymaker responsible for any unconstitutional policy relevant to the causes of action here. In the absence of any alleged act taken against her by an Orange County employee who has 'final policy making authority in the area in which the action was

6    taken,' *Dellutri v. Vill. of Elmsford,* 895 F. Supp. 2d 555, 565 (S.D.N.Y. 2012), the Court need not address such grounds for municipal liability.

6    The Amended Complaint both complains of 'waiting for over 5 hours,' (Am. Compl. 25, 64), and of 'waiting for nearly 5 hours,' (*id.* at 27, 61). The Court addresses this minor discrepancy by assuming an approximate wait of five hours and analyzing Plaintiff's claims accordingly. It bears noting that, according to Orange County, 'Plaintiff's total time spent at the Jail consisted of less than four hours,' (Decl. of Susan Z. Stockburger, Esq. ¶ 10 (Dkt. No. 101)), but the timeline presented by the Amended Complaint suggests somewhere between four and five hours, (*see* Am. Compl. 12-13 (noting Plaintiff entered the Jail at approximately 7:45 p.m. and was released from the Jail around 12 a.m.)). The difference might be material to Plaintiff, but it is not to the law.

7    The Court notes that Plaintiff has not sued any individual Orange County employee regarding the conditions of her confinement. *See* *Green v. Bauvi,* 792 F. Supp. 928, 941 (S.D.N.Y. 1992) (holding that an inmate may recover damages for unconstitutional conditions of confinement *only* 'from the persons who created or maintained those conditions or from the persons who operated or were in charge of the facility').

8    Citing to VTL § 511, Plaintiff asserts that '[t]he defendants herein created/enforced [a] policy, then educated and trained agents of the [defendant] municipalities to ignore well established law.' (Am. Compl. 26 (third alteration in original).) It is unclear exactly to which of the named defendants Plaintiff refers, but even assuming this allegation implicates Orange County, this bare assertion is similarly insufficient to demonstrate the existence of a municipal policy or custom. *See* *Johnson,* 2011 WL 666161, at *4 (holding that a complaint '[containing] only an unsupported conclusory allegation that the [c]ity failed to train the individual [d]efendants' could not withstand a motion to dismiss because the plaintiff did not plead any facts that 'plausibly allege[d] a specific deficiency in the training or supervision program' (internal quotation marks omitted)).

9    To the extent Plaintiff'sought to assert a claim of false arrest against Orange County, the Court re-emphasizes that she was arrested on March 17, 2014 by Amorim, a police officer within Dutchess County. (Am. Compl. 9.) Yet, even if such a cause of action could implicate Moving Defendant, Plaintiff's acknowledgement that she 'was arrested on a warrant from the Town of East Fishkill' necessarily defeats such a claim. (*See id.*) Probable cause 'is a complete defense to an action for false arrest,... whether that action is brought under state law or under § 1983.' *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996) (internal quotation marks omitted); *see also McKay v. City of N.Y.,* 32 F. Supp. 3d 499, 505 (S.D.N.Y. 2014) (same). And, '[p]robable cause is presumed to exist if a plaintiff is arrested pursuant to an arrest warrant. ' *Williams v. City of N.Y.,* 916 F. Supp. 2d 235, 241 (E.D.N.Y. 2012); *see also Phillips v. DeAngelis,* 571 F. Supp. 2d 347, 353 (N.D.N.Y. 2008) ('No cause of action for false arrest will lie where the arrest was effected pursuant to an arrest warrant.'), *aff'd,* 331 F. App'x 894 (2d Cir. 2009). Because 'it is well established that there is no civil remedy available to a plaintiff arrested pursuant to a valid arrest warrant under [§] 1983,' *Batista v. City of N.Y.,* No. 05-CV-8444, 2007 WL 2822211, at *6 (S.D.N.Y. Sept. 25, 2007), Plaintiff cannot state a claim for false arrest.

10    Along these lines, the Amended Complaint merely references, without more, an unconstitutional 'policy to admit bail[-]released [individuals] into the [j]ails system ....' (Am. Compl. 65.) Yet, as discussed above, the Court need not heed such a conclusory allegation. *See Tieman,* 2015 WL 1379652, at *14 (holding that 'conclusory' allegations 'must be disregarded' (internal quotation marks omitted)).

11    Indeed, circuits courts that have addressed this issue have concluded that '[t]here is no constitutional right to speedy bail, ' *Fields v. Henry Cty.,* 701 F.3d 180, 185 (6th Cir. 2012); *cf. Collins v. Ainsworth,* 382 F.3d 529, 545 (5th Cir. 2004) ('There is no right to post bail within 24 hours of arrest.'), and, more specifically, that 'a delay of 'more than eight hours' in many situations would not be a deprivation of [the detainees'] rights,' *Golberg v. Hennepin Cty.,* 417 F.3d 808, 812 (8th Cir. 2005); *see also Fields,* 701 F.3d at 185 (concluding that a 12-hour detention prior to bail release did not violate the plaintiff's constitutional rights); *Lund v. Hennepin Cty.,* 427 F.3d 1123, 1127 (8th Cir. 2005) (finding no constitutional violation on the basis of an alleged 12-hour delay in releasing a detainee from jail).

12    'As opposed to deliberate indifference claims brought by post-conviction prisoners—which arise under the Eighth Amendment—claims for deliberate indifference brought by state pretrial detainees arise under the Fourteenth Amendment.' *Barnes v. Cty. of Monroe,* 85 F. Supp. 3d 696, 728 (W.D.N.Y. 2015) (internal quotation marks omitted). Nevertheless, the same legal standard governs conditions-of-confinement claims brought under the Eighth and Fourteenth Amendments. *See Caiozzo v. Koreman,* 581 F.3d 63, 70-72 (2d Cir. 2009) (collecting cases).

13    Three days after her arrest, Plaintiff sought treatment for her shoulder and 'was advised there was no fracture, but there could be a tear or a sprain,' (Am. Compl. Ex. C ('Medical Records') 37.) This fact further affirms that Plaintiff's shoulder injury was not sufficiently serious under deliberate indifference standard. *See Alster v. Goord,* 745 F, Supp. 2d 317, 337

(S.D.N.Y. 2010) ('Because hospital records reveal no fractures or dislocation, this injury is not sufficiently serious to meet the objective prong of the Eighth Amendment standard.').

14    According to Plaintiff, the medical records attached to the Amended Complaint 'reveal only the extreme ailments' she suffered. (Am. Compl. 27.) Given that these 'extreme ailments' are insufficient to establish the existence of a serious medical need, the Court necessarily reaches the same conclusion as to Plaintiff's assertions that '[she] also suffered mental stress and anguish from pain and humiliation along with severe dehydration, nausea[,] and dizziness ....' (*Id.*)

15    While '[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once,' *Nielsen v. Rabin,* 746 F,3d 58, 62 (2d Cir. 2014) (italics omitted); *see also McGee v. Pallito,* No. 10-CV-11, 2014 WL 360289, at *12 (D.Vt. Feb. 3, 2014) (noting that '[t]he Second Circuit has cautioned that district courts should not dismiss pro se complaints with prejudice without granting leave to amend *at least once* ' (emphasis added) (italics omitted)), here the Court has already granted Plaintiff leave to amend, (*see* Dkt. No. 72). Moreover, '[t]he problem with [her] causes of action is substantive; better pleading will not cure it. ' *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000); *see also Lastra v. Barnes & Noble Bookstore,* No. 11-CV-2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan. 3, 2012) (dismissing with prejudice a pro se complaint that was 'not simply 'inadequately or inartfully pleaded,' but rather [contained] substantive problems such that an amended pleading would be futile'), *aff'd,* 523 F. App'x 32 (2d Cir. 2013).

---

**End of Document**          © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 4299546
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Jamell McCREE, Plaintiff,
v.
C.O. MESSINA, Capt. T. Diaz,
Deputy Warden C. Lemon, Warden
Cooper, and City N.Y.C., Defendants.

No. 14–CV–5201 (JPO).
|
Signed July 15, 2015.

*OPINION AND ORDER*

J. PAUL OETKEN, District Judge.

**\*1** Plaintiff Jamell McCree ("McCree" or "Plaintiff"), proceeding pro se, brings this action alleging that he was subjected to unconstitutional conditions of confinement while he was in custody at the Otis Bantum Correctional Center ("OBCC") on Rikers Island. McCree's lawsuit names various correctional officers and the City of New York (collectively, "Defendants"). Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendants' motion is granted.

**I. Background** [1]

**A. Facts**

According to the amended complaint, McCree and 49 other inmates in the 1–North Annex of OBCC were exposed to large pools of human waste for approximately eleven hours on March 10, 2014. (Dkt. No. 26 ("Am.Compl.") ¶¶ II(A)-(D), V.) McCree alleges that the "pipes all around the tier regurgitated human waste," which "engulfed the bottom tiers along with [a] section at the top tier as well." (*Id.* ¶ V.) McCree was served lunch and dinner amid these conditions. (*Id.* ¶¶ II(D), V.)

Correction Officer ("C.O.") Messina, the 7–3 shift [2] officer, "made no effort" to remove McCree or the inmates from the situation or report the incident. (*Id.* ¶ V.)

If Messina had "reacted accordingly," the inmates would "probably [have] been removed in a timely manner." (*Id.*) The inmates were not actually evacuated from the tier until 7:30 p.m., after being exposed to the pools of waste for "11 hours or more." (*Id.*) This was the third time the pipes malfunctioned, although the first two incidents were not as severe. (*Id.*) Had OBCC's maintenance staff rectified the problem the first time, the incident on March 10, 2014, would never have occurred. (*Id.*) McCree filed a grievance at OBCC with a claim of an "environmental health hazard," but it was unsubstantiated by Warden Cooper "due to officer Messina['s] failure to log it in his book." (*Id.* ¶ IV(E)(1)-(2).) McCree seeks $875,000 for the asserted violation of his civil and human rights, and also for his pain and suffering. (*Id.* ¶ V.)

**B. Procedural History**

McCree filed his initial complaint under 42 U.S.C. § 1983 on July 8, 2014, against C.O. Messina ("Messina"), Captain Jane Doe, Deputy John Doe, Warden Cooper ("Cooper"), and Maintenance (presumably the maintenance department at OBCC). (Dkt. No. 1.) Cooper filed an answer to the initial complaint on December 15, 2014, and also explained that "C.O. Gary Messina died tragically at OBCC on July 30, 2014." (Dkt. No. 15, at 1 n. 1.) In light of Messina's death, Magistrate Judge Dolinger ordered McCree to move for a substitution no later than April 13, 2015, if he wished to pursue his claim against Messina. (Dkt. No. 27, at 2.) Judge Dolinger advised McCree that, in light of his pro se status, a letter expressing a clear desire to replace Messina as a defendant with an appropriate substitute would be sufficient for the purpose of tolling the 90–day window for substitution contemplated by Rule 25 of the Federal Rules of Civil Procedure. (*Id.*) McCree did not move for a substitution by the deadline.

**\*2** McCree filed an amended complaint on February 17, 2015, substituting defendant Captain T. Diaz ("Diaz") for Captain Jane Doe and Deputy Warden C. Lemon ("Lemon") for Deputy John Doe, dropping the claim against Maintenance, and adding New York City as a defendant. (Am.Compl.) Defendants Diaz, Lemon, and Cooper moved to dismiss the amended complaint in its entirety on May 11, 2015. (Dkt. No. 29.) On June 8, 2015, when no opposition papers had been filed, the Court advised McCree that his papers were to be filed on or before June 29, 2015 if he wished to oppose the motion to dismiss. (Dkt. No. 32.) The Court has not received any

papers from McCree to date, and accordingly must decide the motion without the benefit of an opposition.

## II. Discussion

### A. Legal Standards

On a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *City of New York v. Beretta U.S.A. Corp.,* 524 F.3d 384, 392 (2d Cir.2008) (internal quotation marks omitted). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A court will not consider mere conclusory allegations that lack a factual basis. *Hayden v. Paterson,* 594 F.3d 150, 160–61 (2d Cir.2010). A plaintiff's complaint "must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.,* 768 F.3d 247, 254 (2d Cir.2014) (quoting *Iqbal,* 556 U.S. at 680) (alterations and internal quotation marks omitted).

A complaint filed pro se "must be construed liberally to raise the strongest arguments it suggests." *Walker v. Schult,* 717 F.3d 119, 124 (2d Cir.2013) (brackets and internal quotation marks omitted). "[A] *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen v. Rabin,* 746 F.3d 58, 62 (2d Cir.2014) (internal quotation marks omitted). However, a pro se litigant must nonetheless "plead facts sufficient to state a claim to relief that is plausible on its face." *Teichmann v. New York,* 769 F.3d 821, 825 (2d Cir.2014) (per curiam) (internal quotation marks omitted).

### B. Claim Concerning Conditions of Confinement

Section 1983 imposes liability on individuals who, while acting under the color of state law, violate an individual's federally protected rights. *Johnson v. Bendheim,* 00 Civ. 720(JSR), 2001 WL 799569 at *5 (S.D.N.Y. July 13, 2001) (citing *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999)). A § 1983 suit may give rise to liability on the basis of conditions of confinement when a prisoner or

pretrial detainee [3] alleges that the defendant—ordinarily a corrections official—"was deliberately indifferent to a substantial risk of serious harm to him." *D'Attore v. New York City,* No. 10 Civ. 3102(JSR), 2015 WL 556778, at *9 (S.D.N.Y. Feb. 10, 2015). Such a claim must therefore meet two requirements: (1) the alleged deprivation must, as an objective matter, be "sufficiently serious that he was denied the minimal civilized measure of life's necessities," *Walker,* 717 F.3d at 125 (quoting *Gaston v. Coughlin,* 249 F.3d 156, 164 (2d Cir.2001)), and (2) the alleged perpetrator must possess a "sufficiently culpable state of mind," *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). In the context of correctional conditions, courts have characterized this state of mind as "deliberate indifference" to the health and safety of inmates. *Farmer,* 511 U.S. at 834; *see also Wilson v. Seiter,* 501 U.S. 294, 302–03 (1991) (citing *Estelle v. Gamble,* 429 U.S. 97 (1976)) (applying deliberate indifference standard to conditions of confinement claim).

#### 1. Sufficiently Serious Deprivation

**\*3** The Second Circuit has stated that exposure to human waste, under certain conditions, might be sufficiently serious to give rise to an Eighth Amendment claim. *See Gaston v. Coughlin,* 249 F.3d 156, 165–66 (2d Cir.2001) (reinstating an inmate's Eighth Amendment claim where, *inter alia,* the area in front of his cell "was filled with human feces, urine, and sewage water" for several days, and stating that the court would not rule out a constitutional claim where "prison officials knowingly [ ] allow an area to remain filled with sewage and excrement for days on end"); *LaReau v. MacDougall,* 473 F.2d 974, 977–79 (2d Cir.1972) (holding that an inmate held for five days in a "strip cell"—which, *inter alia,* contained only a grate-covered hole in the floor for a toilet that could only be flushed from the outside—was deprived of his Eighth Amendment rights).

However, the weight of authority in this district holds that when "exposure to [human] waste is intermittent or limited to a matter of hours, courts normally will not entertain" actions alleging unconstitutional conditions of confinement. *Ortiz v. Dep't of Corr.,* No. 08 Civ. 2195(RJS)(HBP), 2011 WL 2638137, at *7 (S.D.N.Y. Apr. 29, 2011) (collecting cases that rejected Eighth Amendment claims where exposure to waste lasted for 24 hours or less), *report & rec. adopted,* 2011 WL 2638140 (S.D.N.Y. July 5, 2011). In *Myers v. City of New York,*

the court considered allegations that a pretrial detainee was confined for approximately sixteen hours in a cell where the only place to sit was on "a urine and filth laden floor." No. 11 Civ. 8525(PAE), 2012 WL 3776707, at *7 (S.D.N.Y. Aug. 29, 2012). The court recognized that a detainee "may state a claim for unconstitutionally unsanitary conditions" if he is "housed for a sustained period of time in filthy conditions." *Id.* However, the court held, "[d]iscomfort of this short duration"—sixteen hours in the holding cell—"does not rise to the level of a constitutional violation." *Id.* The Second Circuit affirmed by summary order. *Myers v. City of New York,* 529 F. App'x 105 (2d Cir.2013) (summary order).

Other courts in this district have reached the same result in cases involving similar allegations. *See, e.g., Little v. Mun. Corp.,* 51 F.Supp.3d 473, 490–91 (S.D.N.Y.2014) (rejecting claims regarding "confinement for several hours ... in cells that flooded with sewage" as not sufficiently serious); *Mena v. City of New York,* No. 12 Civ. 28(CM), 2014 WL 2968513, at *10 (S.D . N.Y. June 27, 2014) (deeming "exposure to human waste in the Rikers Island intake cell" to be "too brief to constitute a constitutional violation" where the plaintiff alleged that he was "kept for thirteen hours in an intake cell with a large pool of urine on the floor"); *Florio v. Canty,* 954 F.Supp.2d 227, 235 (S.D.N.Y.2013) (rejecting claim where plaintiff "was exposed to waste only for brief periods" and "his total exposure was less than a few hours"). In light of this precedent, the approximately eleven-hour period during which McCree was allegedly exposed to the pools of waste is insufficient in duration to constitute a sufficiently serious deprivation of the "minimal civilized measure of life's necessities." *See Walker,* 717 F.3d at 125. Accordingly, McCree's pleadings fail to establish this element of a § 1983 claim for unconstitutional conditions of confinement.

### 2. Defendants' State of Mind and Personal Involvement

**\*4** As for the second element of an unconstitutional conditions of confinement claim, namely, an accused correction official's subjective intent, "a plaintiff must show something more than mere negligence." *Cuoco v. Moritsugu,* 222 F.3d 99, 106 (2d Cir.2000). Instead, "[a] prisoner injured while in custody may recover for violation of his [constitutional] rights [only] if the injury resulted from the defendant prison official's purposeful subjection of the prisoner to a 'substantial risk of serious harm' or from the official's deliberate indifference to that risk."

*Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir.1997) (quoting *Farmer,* 511 U.S. at 834). "An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Cuoco,* 222 F.3d at 107 (quoting *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998)).

Additionally, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). Personal involvement of a supervisory defendant can be established through evidence that the defendant: (1) participated directly in the alleged constitutional violation, (2) failed to remedy the wrong after being informed of it through a report or appeal, (3) "created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom," (4) "was grossly negligent in supervising subordinates who committed the wrongful acts," or (5) "exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin,* 58 F .3d 865, 873 (2d Cir.1995) (citing *Wright,* 21 F.3d at 501).

McCree's amended complaint also fails to establish this element as to any of the remaining defendants. First, the complaint lists Lemon and Diaz as defendants without making any specific allegations against either of them. In particular, McCree does not allege that either Lemon or Diaz purposefully subjected McCree to a substantial risk of serious harm or was deliberately indifferent to such a risk. Similarly, the complaint contains no allegations of Lemon's or Diaz's personal involvement with the conditions about which McCree complained. Supervisory liability in a § 1983 action depends on a showing of some personal responsibility and cannot be solely based on *respondeat superior. Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) (citing *Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989)). "[P]roof of 'linkage in the prison chain of command' is [also] insufficient." *Id.* (quoting *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985)). Therefore, McCree's claims against Lemon and Diaz must be dismissed, in the alternative, because the

complaint fails to allege either their deliberate indifference or their personal involvement.

**\*5** As for defendant Cooper, the complaint similarly makes no allegation of his knowledge of the conditions in McCree's tier on March 10, 2014, or of a substantial risk of harm stemming from those conditions. Furthermore, Cooper's "status as warden ..., standing alone, is ... insufficient to support a finding of supervisory liability." *Walker v. Schriro,* No. 11 Civ. 9299(JPO), 2013 WL 1234930, at \*15 (S.D.N.Y. Mar. 26, 2013). The complaint's only specific allegation regarding Cooper is that he deemed McCree's grievance unsubstantiated because Messina failed to log it in his book. "[T]he Court of Appeals and numerous district courts in this Circuit have repeatedly held that receipt of grievance letters is insufficient to impute personal involvement." *Voorhees v. Goord,* No. 05 Civ. 1407(KMW)(HBP), 2006 WL 1888638, at \*5 (S.D.N.Y. Feb. 24, 2006) (alterations and internal quotation marks omitted) (collecting cases), *report & rec. adopted,* No. 05 Civ. 1407, Dkt. No. 27 (S.D.N.Y. Sept. 7, 2006). Similarly, "[b]road, conclusory allegations that a high-ranking defendant was informed of an incident are ... insufficient." *Gonzalez v. Sarreck,* No. 08 Civ. 3661(RWS), 2011 WL 5051341, at \*14 (S.D.N.Y. Oct. 24, 2011) (citing *Hernandez v. Goord,* 312 F.Supp.2d 537, 547 (S.D.N.Y.2004)). In addition, merely "affirming the administrative denial of a prison inmate's grievance ... is insufficient to establish personal involvement under section 1983." *Manley v. Mazzuca,* No. 01 Civ. 5178(KMK), 2007 WL 162476, at \*10 (S.D.N.Y. Jan. 19, 2007). Therefore, the claim against Cooper must also be dismissed, in the alternative, for failing to allege either the requisite mental state or personal involvement.

Finally, the complaint does allege that Defendant Messina was personally involved in the allegedly unconstitutional actions by his failure to remove McCree and other inmates from the tier after it had flooded with waste. However, as Messina is deceased and McCree failed to replace him with an appropriate substitute within the time limit set out in Judge Dolinger's order, the claim against Messina is dismissed.

### C. Municipal Liability

The complaint is construed to include the City of New York (the "City") as a defendant.[4] "[U]nder § 1983, local governments are responsible only for their *own*

illegal acts. They are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson,* 131 S.Ct. 1350, 1359 (2011) (citation and internal quotation marks omitted). "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* (quoting *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* Liability under § 1983 may also exist "where a municipality's failure to train or supervise its officers amounts to deliberate indifference." *Barone v. United States,* No. 12 Civ. 4103(LAK), 2014 WL 4467780, at \*21 (S.D.N.Y. Sept. 10, 2014).

**\*6** Thus, a municipality will be held liable for the acts of its employees only where "(1) an official policy or custom ... (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Auth. of N.Y. & N.J.,* 615 F.3d 129, 140 (2d Cir.2010) (quoting *Wray v. City of New York,* 490 F.3d 189, 195 (2d Cir.2007)). "Boilerplate" assertions of an unconstitutional policy do not suffice. *See Matthews v. City of New York,* 889 F.Supp.2d 418, 445–46 (S.D.N.Y.2012).

Here, the amended complaint does not allege that any policy or custom of the City was the cause of the conditions on March 10, 2014, nor that those conditions were the result of a widespread practice or of the City's failure to train its officers. Accordingly, even if the complaint stated a claim of unconstitutional conditions of confinement, the claim against the City of New York would be dismissed.

### D. Leave to Amend

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend should be granted "freely ... when justice so requires." Fed.R.Civ.P. 15(a) (2). Furthermore, "[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010) (brackets and internal quotation marks omitted). In light of the conclusion reached above (section II.B.1) that the alleged facts do not rise to the level of an Eighth Amendment violation, the Court concludes that McCree could not

amend his complaint to state a valid claim to relief. Leave to amend is therefore denied.

### III. Conclusion
For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Clerk of Court is directed to terminate the motion at docket number 29 and to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 4299546

### Footnotes

1    The following facts are taken from the allegations in the amended complaint, which are accepted as true for purposes of this motion.

2    The Court interprets this to mean that Messina's shift ran from 7:00 a.m. to 3:00 p.m. on the day in question.

3    The Eighth Amendment, as incorporated against the states through the Fourteenth Amendment, applies to claims arising from the conditions of confinement of convicted prisoners. *See Caiozzo v. Koreman,* 581 F.3d 63, 69 & n. 3 (2d Cir.2009). In the case of a pretrial detainee, the Due Process Clause of the Fourteenth Amendment applies to such claims. *Id.* at 69. The complaint does not set out McCree's status, but the same substantive standard applies in either circumstance. *See Hernandez v. Corizone Med. Dep't Staff,* No. 14 Civ. 192(JPO), 2015 WL 273690, at *2 n. 6 (S.D.N.Y. Jan. 22, 2015) (citing *Caiozzo,* 581 F.3d at 72).

4    The amended complaint includes "City N.Y.C." as a defendant in the caption, but the City is not listed as a defendant in Part I(B). Because pro se pleadings are construed liberally, *see Walker,* 717 F.3d at 124, the Court considers the complaint to contain a claim against the City.

---

**End of Document**                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

Not Reported in F.Supp.2d, 2011 WL 1103045 (N.D.N.Y.)

(Cite as: 2011 WL 1103045 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Valery LATOUCHE, Plaintiff,
v.
Michael C. TOMPKINS, C.O., Clinton Correctional
Facility; Dean E. Laclair, C.O., Clinton Correctional
Facility; Jeffrey R. Ludwig, C.O ., Clinton Correctional
Facility; Michael B. King, Sgt., Clinton Correctional
Facility; D. Mason, C.O., Clinton Correctional Facility;
B. Malark, C.O., Clinton Correctional Facility; John
Reyell, C.O., Clinton Correctional Facility; Bob
Fitzgerald, R.N., Clinton Correctional Facility; John
Doe, C.O. (C.O. Gallery Officer Company Upper F–6);
John Doe, C.O. (Mess Hall Supervising C.O.),
Defendants.
No. 9:09–CV–308 (NAM/RFT).

March 23, 2011.
Valery LaTouche, Ossining, NY, pro se.

Eric T. Schneiderman, Attorney General for the State of
New York, Krista A. Rock, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for Defendants.

**MEMORANDUM–DECISION AND ORDER**

NORMAN A. MORDUE, Chief Judge.
**INTRODUCTION**
**\*1** In this *pro se* action under 42 U.S.C. § 1983,
plaintiff, an inmate in the custody of the New York State
Department of Correctional Services ("DOCS"), claims
that defendants violated his Eighth Amendment rights as
a result of a physical altercation. Defendants moved for
summary judgment pursuant to Rule 56 of the Federal
Rules of Civil Procedure (Dkt. No. 46) and plaintiff
opposed the motion. (Dkt. No. 53). The motions were
referred to United States Magistrate Judge Randolph F.
Treece for a Report and Recommendation pursuant to 28
U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c).

Magistrate Judge Treece issued a Report and
Recommendation (Dkt. No. 60) recommending that
defendants' motion be granted in part and denied in part.
Specifically, Magistrate Judge Treece recommended
awarding summary judgment dismissing the following: (1)
plaintiff's claims for monetary relief against all defendants
in their official capacity; (2) plaintiff's claims of medical
indifference against defendant Fitzgerald; and (3)
plaintiff's allegations of verbal harassment by defendant
Mason. Magistrate Judge Treece also recommended
denying defendants' motion for summary judgment on
plaintiff's excessive force claims against defendants
Tompkins, LaClair, Mason, Malark and Reyell and
plaintiff's failure to protect claims against defendants
Ludwig and King.

Defendants filed specific objections to portions of the
Report and Recommendation arguing: (1) that the
Magistrate Judge erred in "overlooking" plaintiff's failure
to comply with Local Rule 7.1(a) (3); (2) that the
Magistrate Judge erred when he failed to apply the
*Jeffreys* exception as plaintiff's testimony was incredible
as a matter of law; and (3) plaintiff's excessive force
claims against defendant Reyell are subject to dismissal
for lack of personal involvement. (Dkt. No. 61). Plaintiff
does not object to the Report and Recommendation. (Dkt.
No. 62).

In view of defendants' objections, pursuant to 28
U.S.C. § 636(b) (1)(c), this Court conducts a *de novo*
review of these issues. The Court reviews the remaining
portions of the Report–Recommendation for clear error or
manifest injustice. *See Brown v. Peters,* 1997 WL 599355,
*2–3 (N.D.N.Y.),* *af'd without op.,* 175 F.3d 1007 (2d
Cir.1999); *see also Batista v. Walker,* 1995 WL 453299,
at *1 (S.D.N.Y.1995) (when a party makes no objection to
a portion of the report-recommendation, the Court reviews
that portion for clear error or manifest injustice). Failure
to object to any portion of a report and recommendation
waives further judicial review of the matters therein. *See
Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993).

**DISCUSSION**

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1103045 (N.D.N.Y.)

(Cite as: 2011 WL 1103045 (N.D.N.Y.))

## I. Local Rule 7.1(a)(3)

The submissions of *pro se* litigants are to be liberally construed. *Nealy v. U.S. Surgical Corp.,* 587 F.Supp.2d 579, 583 (S.D.N.Y.2008). However, a *pro se* litigant is not relieved of the duty to meet the requirements necessary to defeat a motion for summary judgment. *Id.* (citing *Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 50 (2d Cir.2003)). Where a plaintiff has failed to respond to a defendant's statement of material facts, the facts as set forth in defendant's Rule 7.1 statement will be accepted as true to the extent that (1) those facts are supported by the evidence in the record, and (2) the non-moving party, if he is proceeding *pro se,* has been specifically advised of the potential consequences of failing to respond to the movant's motion for summary judgment. *Littman v. Senkowski,* 2008 WL 420011, at *2 (N.D.N.Y.2008) (citing *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996)). [FN1]

> FN1. Local Rule 7.1(a)(3) provides:
>
> Summary Judgment Motions
>
> Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits. *Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion.*
>
> The moving party shall also advise *pro se* litigants about the consequences of their failure to respond to a motion for summary judgment. See also L.R. 56.2.
>
> The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs. *The Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.*
>
> Local Rule 7.1(a)(3) (emphasis in original).

**\*2** The record herein contains few undisputed facts. Plaintiff and defendants disagree on many of the events that transpired and provide conflicting accounts of the circumstances surrounding the incident. In support of the motion, defendants properly filed a Statement of Material Facts pursuant to Local Rule 7.1 and notified plaintiff about the consequences of his failure to respond to the motion for summary judgment. Plaintiff does not dispute that he received such notification from defendants. Plaintiff responded with a handwritten "Statement of Facts", without citations to the record, and failed to specifically admit or deny defendants' factual statements as required by Local Rule 7.1. However, plaintiff also annexed a copy of his deposition transcript. In the deposition, upon questioning from defense counsel, plaintiff testified as follows:

Q. ... Have you read the complaint?

A. Yes, ma'am.

Q. So, you are aware of its contents?

A. Yes, ma'am.

Q. Did anyone help you prepare the complaint?

A. No, ma'am.

Q. Are there any statements contained in the complaint that you now wish to change or modify?

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1103045 (N.D.N.Y.)

(Cite as: 2011 WL 1103045 (N.D.N.Y.))

A. I'm not sure.

Q. Well, let me ask you this: So, do you adopt this document under oath as true to the best of your knowledge?

A. Yes, ma'am.

Transcript of Plaintiff's Deposition at 13.

A verified complaint may be treated as an affidavit for the purposes of a summary judgment motion and may be considered in determining whether a genuine issue of material fact exists. *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) (the plaintiff verified his complaint by attesting under penalty of perjury that the statements in the complaint were true to the best of his knowledge). Based upon the aforementioned colloquy, the Court deems plaintiff's complaint to be "verified" and as such, will treat the complaint as an affidavit. *See Torres v. Caron,* 2009 WL 5216956, at *3 (N.D.N.Y.2009). While plaintiff has not formally and technically complied with the requirements of Local Rule 7.1(a)(3), his opposition to defendants' motion contains sworn testimony. In light of his *pro se* status and the preference to resolve disputes on the merits rather than "procedural shortcomings", to the extent that plaintiff's "Statement of Facts" and assertions in the complaint do not contradict his deposition testimony, the Court will consider those facts in the context of the within motion. *See Mack v. U.S.,* 814 F.2d 120, 124 (2d Cir.1987); *see also Liggins v. Parker,* 2007 WL 2815630, at *8 (N.D.N.Y.2007) (citing *Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir.1996)). The Court has reviewed plaintiff's complaint and compared the allegations with the testimony presented at his deposition and adopts Magistrate Judge Treece's summary of the "facts" as presented by both parties.[FN2]

FN2. While the Court adopts Magistrate Judge Treece's recitation of defendants' and plaintiff's versions of the facts, the Court does not adopt the reasoning set forth in the Footnote 2 of the Report and Recommendation.

## II. *Jeffreys* Exception

Defendants argue that the Court should apply *Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir.2005) and award summary judgment dismissing all claims of excessive force based upon plaintiff's implausible and contradictory claims.

**\*3** "It is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment' ". *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir.2006) (citing *Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir.1997) (unfavorable assessments of a plaintiff's credibility are not "within the province of the court on a motion for summary judgment")). A narrow exception to this general rule was created by the Second Circuit in *Jeffreys:*

While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether "the jury could reasonably find for the plaintiff," and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account. Under these circumstances, the moving party still must meet the difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor.

*Id.* at 554 (internal citations and citations omitted).

Here, while plaintiff relies exclusively on his own testimony, for *Jeffreys* to apply, the testimony must also be "contradictory and incomplete". In this regard, defendants argue that plaintiff's allegations are contradicted by his prior accounts of the incident. Defendants cite to the record and argue that plaintiff told Fitzgerald that, "I hit the officer first" and that "I was hurt when I was subdued". Moreover, defendants point out that these statements were documented in an Inmate Injury Report executed by plaintiff.

Plaintiff does not deny making the aforementioned statements. However, in his deposition, plaintiff explained

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1103045 (N.D.N.Y.)

(Cite as: 2011 WL 1103045 (N.D.N.Y.))

those discrepancies and testified:

Q. —did Nurse Fitzgerald ask you any questions while he was examining you?

A. I think he asked me how am I feeling, how did this happen?

Q. And what did you say?

A. I told him I was nervous and that [sic] whatever officer D. Mason told me to tell him.

Q. What did you say?

A. I told him I was nervous and whatever officer D. Mason told me to tell him, which was that I got hurt being subdued—

Q. Which was—

A. —and that I started this.

Q. And is that the truth?

A. No.

Q. Why did you tell the nurse that?

A. Because I was being forced to.

Q. Forced to how?

A. By the officers that [sic] was there.

Q. Did you sign a form admitting that you hit the officer first and you were hurt when you were subdued?

A. Yes, ma'am.

Q. Why did you do that?

A. Because the [sic] officer D. Mason kept smacking me for me to do that.

Transcript of Plaintiff's Deposition at 53–54.

**\*4** In the Report and Recommendation, Magistrate Judge Treece concluded that plaintiff's "fear of retribution" was a plausible explanation for the discrepancies in his testimony. This Court agrees and adopts the Magistrate Judge's conclusions. *See Langman Fabrics v. Graff Californiawear, Inc.,* 160 F.3d 106, 112–13 (2d Cir.1998); *see also Cruz v. Church,* 2008 WL 4891165, at \*5 (N.D.N.Y.2008) ("[t]he Court notes that ... it would be have difficulty concluding that [the][p]laintiff's statement of June 5, 2005, and his statement of June 16, 2005, are wholly irreconcilable, given his proffered explanation that he made the statement of June 5, 2005, out of fear of retribution by [the] [d]efendants).

Defendants also argue that plaintiff cannot identify which individuals participated in the attack; that plaintiff's injuries are consistent with the brief use of force as described by defendants to subdue plaintiff; and that plaintiff's version is contradicted by defendants' affidavits. Magistrate Judge Treece found that plaintiff was able to identify some individuals involved in the assault which, "stands in stark contrast to the plaintiff in *Jeffreys* who was unable to identify any of the officers involved in the alleged assault". Upon review of the record, as it presently exists, the Court agrees and finds that plaintiff's testimony is not wholly conclusory or entirely inconsistent to warrant application of the *Jeffreys* exception. *See Percinthe v. Julien,* 2009 WL 2223070, at \*7 (S.D.N.Y.2009) (the court rejected the defendants' argument that the plaintiff's claims were subject to dismissal for implausibility as his injuries did not reflect the attack that he described and his description of the incident changed over time holding that the plaintiff's testimony, "[did] not reach the level of inconsistency and lack of substantiation that would permit the Court to dismiss on these grounds").

Magistrate Judge Treece provided an extensive summary of the record and applicable law and found that the evidence did not support deviating from the established rule that issues of credibility are not resolved on summary judgment. On review, the Court agrees with the Magistrate's recommendations and concludes that the *Jeffreys* exception does not apply. Accordingly, the Court accepts and adopts the Report and Recommendation on this issue.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1103045 (N.D.N.Y.)

(Cite as: 2011 WL 1103045 (N.D.N.Y.))

### III. Reyell's Personal Involvement

Defendants argue that the Magistrate Judge erred when he failed to dismiss the complaint against Reyell on the grounds that he was not personally involved in the attack. Defendants claim that the "RRO erroneously cites plaintiff's declaration as stating that 'it was defendant Reyell and another officer who removed the shirt' ". Defendants claim that the declaration and complaint clearly state that, "Officer Rock orchestrated the removal of plaintiff's shirt".[FN3] Defendants argue that the assertions in plaintiff's declaration (submitted in response to the motion for summary judgment) and complaint are contradicted by plaintiff's deposition testimony. Defendants claim that plaintiff testified that Reyell tried to cover up the incident by removing the shirt he was wearing.

> FN3. Officer Rock is not a defendant herein.

**\*5** The Court has reviewed plaintiff's complaint, declaration and deposition transcript and finds defendants' summary of plaintiff's assertions to be inaccurate. In plaintiff's complaint, on page 8, plaintiff alleges:

> Feeling extremely weak the claimant responded with a shake of his head. Once this performance was over with Correctional Officer R. Rock, the individual who held on to the photograph camera and who is responsible for capturing the claimant's injuries [sic] photos pointed to the claimant's bloodly [sic] stain kitchen white colored uniform [ ] as co-workers....
>
> Correctional Officer D. Mason then roughly removed the article of clothing and with the help of on[e] other they discarded the item of clothings [sic].

In Paragraph 22 of plaintiff's declaration, he states:

> Officer Rock, the individual who held the photograph camera and was responsible for capturing LaTouche injuries pointed to LaTouche [sic] bloody kitchen white colored uniform to his coworker asking them to remove the article of clothing before he take [sic] any pictures. Mason then roughly removed the clothing and with the help of an other [sic] officer they discarded the items of

clothing.

In his deposition, plaintiff testified:

Q. What about Defendant Reyell, why are you suing Reyell?

A. Because defendant Reyell, that's the officer that was holding the camera and he tried to cover up the incident.

Q. How so?

A. That's when him and the other officer that was there, when they was searching me, strip searching me they took my shirt and they kept screaming something about let's remove this bloodstained shirt, let's remove this bloodstained shirt, we can't have this for the camera.

\* \* \*

Q. Reyell and another officer took your shirt off?

A. Yes, ma'am.

Q. Do you remember the other officer's name?

A. No, ma'am.

Transcript of Plaintiff's Deposition at 63–64.

Here, the Magistrate Judge stated that any inconsistency or discrepancy [in plaintiff's testimony], "go[es] to the weight ... accorded to plaintiff's testimony". The Court agrees. Any discrepancies or inconsistencies in plaintiff's testimony are for a jury to assess. In the Second Circuit case of *Fischl v. Armitage,* the plaintiff/inmate alleged that he was assaulted in his cell by other inmates. *Fischl,* 128 F.3d at 54. The district court dismissed the plaintiff's complaint as against one defendant based upon "inconsistent statements". *Id.* The Second Circuit vacated the judgment of the district court holding:

> [T]he district court apparently questioned whether there had been an attack on Fischl at all, principally because of inconsistencies in his accounts of the event, his failure to report such an attack to prison workers in the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1103045 (N.D.N.Y.)

(Cite as: 2011 WL 1103045 (N.D.N.Y.))

area on that morning, and the failure of those workers to notice any indications that he had been beaten. That skepticism, however, rests on both a negative assessment of Fischl's credibility and the drawing of inferences adverse to Fischl.

**\*6** Likewise, inconsistent statements by Fischl as to, for example, whether it was five, six, or seven inmates who attacked him, and as to what he observed or overheard just prior to the attack, go to Fischl's credibility. While inconsistencies of this sort provide ammunition for cross-examination, and they may ultimately lead a jury to reject his testimony, they are not a proper basis for dismissal of his claim as a matter of law. The jury might well infer, for example, that while Fischl was under siege he was understandably unable to take an accurate census of the number of inmates holding him and kicking him in the face.

*Fischl,* 128 F.3d at 56.

In this matter, without a credibility assessment of plaintiff, the record does not warrant an award of summary judgment. Accordingly, the Court adopts the Magistrate's recommendation and denies summary judgment on this issue.

### CONCLUSION

It is therefore

**ORDERED** that the Report and Recommendation of United States Magistrate Judge Randolph F. Treece (Dkt. No. 60) is adopted; and it is further

**ORDERED** that for the reasons set forth in the Memorandum–Decision and Order herein, defendants' motion for summary judgment is granted in part and denied in part; and it is further

**ORDERED** that the Clerk provide copies of this Order to all parties.

**IT IS SO ORDERED.**

N.D.N.Y.,2011.

Latouche v. Tompkins
Not Reported in F.Supp.2d, 2011 WL 1103045 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.